IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS, INC., et al., | Case No.: 1:17-cv-01953-RDM |
| Plaintiffs, | Hon. Randolph D. Moss |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION, et al., | |
| Defendants. | |

**<u>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>**

# Union Exhibit 24:

# Declaration of James M. Greene

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS AIR, INC. and POLAR AIR CARGO WORDLWIDE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224,<br><br>Defendants. | Civil Action No. 1:17-CV-01953 RDM |

## DECLARATION OF JAMES M. GREENE

I, James M. Greene, do hereby declare under penalty of perjury pursuant to 28 U.S.C.§ 1746, the following:

1. I am employed as a pilot by Atlas Air, Inc. ("Atlas"). I have an airline transport pilot's license from the Federal Aviation Administration and work as an Atlas captain flying Boeing 767 aircraft. I have worked at Atlas since October 31, 2011. I am also a union representative for the Atlas pilots and am familiar with the Atlas scheduling programs and assist both the pilots and Atlas with respect to scheduling matters. As such, and with Atlas's knowledge and consent, I have access to Atlas's scheduling programs.

2. Since 2011, Atlas and its affiliated company, Polar Air Cargo Worldwide, Inc. (Polar) have operated separately under their own regulatory operating certificates and authorities

but the pilots who fly their aircraft work under one collective bargaining agreement (CBA) and one seniority list. Moreover, despite the fact that both Atlas and Polar are collectively referred to as the "company" under the CBA, the pilots who operate their aircraft pursuant to the CBA are all employees of Atlas.

3.   I understand that Atlas and Polar (collectively, the "Plaintiffs") have filed a lawsuit against my union, claiming that the union and the Atlas pilots are engaging in an illegal slowdown. I have read Plaintiffs' complaint and the declaration of Captain Jeffrey Carlson in support of Atlas's motion for a preliminary injunction. I understand that Captain Carlson is the Senior Vice President of Flight Operations for Plaintiffs' corporate parent, Atlas Air Worldwide Holdings, Inc. Neither Plaintiffs' complaint nor Captain Carlson's declaration specifically identify the pilots whom they have accused of engaging in various purported unlawful slowdown activity. The Union sent a communication to the pilots asking them to read the complaint and Captain Carlson's declaration and to contact the Union if the recognized that they were being described in the complaint and declaration. At the same time, I began researching the schedules regarding the flights identified in the complaint and Captain Carlson's declaration to determine whether I could substantiate the accusations and allegations contained in them. I paid particular attention to the accusations concerning improper sick leave callouts by the Atlas pilots, because those allegations seemed to be vague and therefore required time to figure out what was going on. Based on my research using Atlas's scheduling programs, the underlying facts relating to claims and allegations made by Plaintiffs in the complaint and in Captain Carlson's declaration are not consistent with those claims and accusations. Based on my research, these claims accusations by Plaintiffs and Captain Carlson are not true.

4.  For example, the first bullet point claim contained in Paragraph 44 of the complaint and Paragraph 18 of Captain Carlson's declaration states that:

> *On June 7, 2017, 3 crewmembers consecutively called out sick for a single DHL flight from CVG to Narita, Japan, causing a rolling delay of nearly nine hours. A FO initially called out sick, forcing Atlas to find a replacement and adjust the departure time. Then the replacement pilot called out sick, forcing Atlas to find a 2nd replacement and further adjust the departure time. Finally, the second replacement pilot called out sick, forcing Atlas to find a third replacement and again adjust the departure time. These consecutive sick calls also impacted the return flight from Narita to CVG, which was a major transport of packages from Japan that experienced a corresponding delay of nearly 9 hours due to the 3 sick calls in CVG. As a result, all of the packages missed the sort deadline into CVG and could not be delivered until the day after they were promised by DHL to its customers.*

Based on my review of the schedules concerning the flight described above, the flight in question was Flight PO 213, which was scheduled to depart from CVG Airport near Cincinnati, Ohio, to Narita Japan on June 7, 2017 at 09:15z. As of May 31, 2017, four crew members (pilots) were assigned to operate that flight: Captain Kurtis Oberg and First Officers Drue Overby, Brian Wallingford, and Amber Scully. On June 6, 2017, First Officer Scully was placed on MED at 08:44z. Four minutes later, at 0848z, Atlas's scheduling department assigned Captain Lofts to replace First Officer Scully. Then, at 10:56z, 2 hours and 8 minutes after Captain Lofts was assigned to Flight No. 213 to replace Scully, Atlas's scheduling department removed him and reassigned him to another flight, namely, Flight No. PO 751, which was departing from CVG to Chicago's O'Hare Airport (ORD). Plaintiffs' and Captain Carlson's claim that the first replacement pilot (Lofts) for First Officer Scully also called out MED, therefore, is incorrect. Instead, as noted above, Atlas removed him and reassigned him to another flight. Captain Lofts, Scully's replacement, was himself replaced one minute after he was removed from Flight No. 213, at 10:57z. First Officer Erik Taylor, replaced him and became First Officer Scully's second replacement. Taylor had been assigned to PO Flight 751, the flight that Captain Lofts had been

assigned to before he was reassigned to PO Flight 213. Then, on June 7, 2017, at 03:52z, 16 hours and 55 minutes after he had been assigned to operate PO Flight 213 as the second replacement for First Office Scully, First Officer Taylor was reassigned back to his original flight, PO 751. Again, contrary to Plaintiffs' and Captain Carlson's claim that the second replacement pilot for Captain Scully also called out sick, Atlas removed him and assigned him to another flight then returned him to the flight referred to by Plaintiffs and Captain Carlson. Then, on June 7, 2017, at 06:37z, Atlas removed First Officer Siu Cheung (Vincent) Moy from his June 8, 2017 previously assigned flight from CVG to Seoul, South Korea (Flight No. PO237) as the third replacement for First Office Scully on PO Flight 213. There were other crew changes related to PO Flight 213. In this regard, on June 6, 2017, at 23:46z, First Officer Overby was placed on MED by Atlas. Atlas replaced First Officer Overby with First Officer Francisco Ruiz on June 7, 2017 at 00:34z. First Officer Ruiz had been on reserve. First Officer Ruiz was not assigned to replace First Officer Scully but rather First Officer Overby.

5. The third bulleted paragraph of Paragraph 44 of the complaint and the third bulleted paragraph of Captain Carlson's declaration state as follows:

> *On July 16, 2017, A B-767 flight from Houston to Norfolk Naval Station in Norfolk, Virginia to pick up 213 military service members was delayed over 36 hours as a result of the Captain calling out sick at his scheduled wakeup time and Atlas being unable to assign a rested, available pilot who could get to Houston, which is not a crew base for B-767 aircraft. As a result, the Norfolk service members were picked up late and suffered a delayed arrival into Kuwait. Atlas spent $44,000 to house and feed the distressed passengers.*

Based on my review of Atlas's scheduling records, Plaintiffs' and Captain Carlson's claim regarding this flight do not appear to be accurate. Per my review of Atlas's scheduling records, Captain Jeff Campbell was awarded a reserve line with a schedule of 6 reserve days in CVG (Cincinnati Airport) from July 14th through July 19th. On July 9th at 1413z

Captain Campbell's schedule was changed to show him traveling on a commercial passenger carrier from CVG to IAH (Houston Intercontinental). He then was scheduled to rest until his flight assignment to operate a flight GTI 7686, which was a ferry flight from IAH (Houston) to NGU (Norfolk Naval Air Station) on July 15, 2017. He acknowledged these changes to his schedule on July 14th at 1324z. Subsequently, Captain Campbell is marked as MED at 0321z. This is approximately 6 minutes after he should have received his wake up call for the flight. Additionally, even though his schedule showed a commercial flight from CVG to IAH and then rest until reporting for the flight, the scheduling records show that there was no hotel room booked for Captain Campbell and no travel arrangements were made for Captain Campbell to travel from CVG or his gateway airport to IAH. It appears from Atlas's scheduling records that Captain Campbell was not ever in IAH and was therefore not ever in position to operate the IAH-NGU ferry flight. Thus, while Campbell is shown in Atlas's scheduling system as having his trip removed and being placed on MED status six minutes after he would have received his wake up call in Houston, coupled with the fact that there was neither a commercial airline reservation to IAH nor a hotel booked for him in Houston, strongly suggests that either the Atlas scheduling department or Captain Campbell, or both, made a mistake and that had nothing to do with an alleged concerted plot by the pilots to harm Plaintiffs' operations. If anything, the facts I have been able to learn regarding the IAH-NGU flight show that the Atlas's scheduling department appears to have played a critical role in the delay.

6.  The second sub-bulleted paragraph contained in the 5th bulleted paragraph of Paragraph 44 of the Complaint and the second sub-bulleted paragraph contained in the 5th bulleted paragraph of Paragraph 18 of Captain Carlson's declaration states that:

*Another flight full of general cargo from Pudong International Airport in Shanghai to Anchorage was delayed 11 hours and 15 minutes due to a sick call by a pilot at his scheduled wakeup time, and would continue to run late for three days as a result.*

The flight that the Plaintiffs and Captain Carlson are referencing here is Flight PO 218 on August 27, 2017 at 2115z with a 3 pilot crew consisting of Captain Bauer, First Officer Armstrong, and First Officer Viertel. After reviewing the schedule relating to that flight, I could not find any pilots with MED (referred to by Plaintiffs and Captain Carlson as a "sick call") on their schedule in PVG on August, 27 2017. Atlas's scheduling records are contrary to Plaintiffs' and Captain Carlson's claims as quoted above. The only 747 crewmember on MED status in the vicinity was in Hong Kong (HKG) and not scheduled to fly to PVG. First Officer Viertel was originally scheduled to operate the flight in question but was removed when he was delayed departing SYD for PVG. Per the company's records this delay was due to a combination of aircraft maintenance, airport curfew and a crew fatigue call. First Officer Montalvo was removed from his previously scheduled flight, PO998 PVG-ANC, to operate the flight in question at 0817z on August 27th then was returned to operating PO998 at 1803z on August 27th. First Officer McCoy who finally operated the flight was assigned at 2006z on August 27th, He arrived in PVG on August 27th at 1810z and had been previously scheduled to deadhead on a commercial flight to HKG at the time PO218 departed.

7.  The third sub-bulleted paragraph contained in the 5th bulleted paragraph of Paragraph 44 of the Complaint and the third sub-bulleted paragraph contained in the 5 bulleted paragraph of Paragraph 18 of Captain Carlson's declaration states that:

> *Another flight for Nippon Cargo Airlines from Anchorage to Narita was delayed nearly 14 hours due to a pilot sick call. No pilots were available at the base because of other crew call outs.*

The flight that Plaintiffs and Captain Carlson are referencing here is Flight No. 7186. Atlas's scheduling records contain a note from the Atlas scheduling department stating:

> *Primary delay 67 for "N407KZ" for flight 7167, ANC-NRT of 08.27.2017 Late arrival of crew on N493MC required additional rest..JC*

The initials at the end of the note, "JC" are those of the scheduling department person who entered the note into the scheduling record. Based on my review of Atlas's scheduling records, this flight was scheduled as 5Y7167 on August 27th to depart at 0315z and did not depart until 1840z. First Officer Glover was assigned to operate the flight in question on August 25th at 0918z. He was reassigned to this flight due to a crew scheduling error which had previously assigned First Officer Glover to flight CX3281 operated on a 747-8 aircraft which he was not qualified to operate. First Officer Glover was removed from flight 5Y7167 and placed on MED status on August 26th at 2338z. First Officer Glover was then replaced with First Officer Webster who was in his required pre-departure rest period for flight 5Y4312 (the first flight of his trip which was assigned to him on August 23rd) with a scheduled departure time of 1840z on August 27th and could not legally be contacted or required to report for duty any earlier than the report time for his previously scheduled departure. There were no other reserve pilots on duty in Anchorage (ANC) at the time and the flight was delayed until First Officer Webster reported for duty. The delayed arrival of aircraft N493MC as referenced in Captain Carlson's declaration was not the proximate cause of the 14 hour delay. Captain Jeffrey L. Campbell, who was part of the crew operating the referenced flight arriving into Anchorage from Shanghai, required a minimum of 10 hours of rest before he would be legal to depart which established the previously scheduled 0315z departure of flight 5Y7167. Captains Campbell and Brayton came on duty for the 0315z

departure and were subsequently released into an additional 10 hours and 55 minutes of rest due to not having a complete crew. This additional rest was required to allow them to report for duty at the same time as First Officer Webster, who was unavailable to report for a departure earlier than 1840z.

8. The fourth "sub-bullet" point contained in the 5th dark bullet point of Paragraph 44 of the Complaint and the third "sub-bullet point contained in the 5th dark bullet point of Paragraph 18 of Captain Carlson's declaration states that:

> *A flight for the U.S. military transporting needed supplies from Hill Air Force Base near Ogden, Utah to Hahn, Germany (and then going to Qatar) was delayed approximately 20 hours due to a sick call by a First Officer.*

The flight in question is flight 5Y8018 scheduled to depart HIF August 26th at 1905z. It is neither accurate nor fair to blame the delay of the flight on a "sick call by a First Officer." The First Officer in question, Daniel Pocock, a reserve pilot in Los Angeles, was placed on MED status August 25, 2017 at 17:38z, approximately twenty-five hours before the flight was scheduled to depart. Atlas had previously scheduled First Officer Ron Roberts, to fly as a 2-man crew from Chicago to Hill Air Force Base, he was then briefly scheduled to extend his duty day and operate Flight 8018 on to HHN. First Officer Roberts legally could not operate Flight 8018 immediately after operating the flight from ORD due to regulatory and contractual two-man crew duty day limitations. First Officer Robert's schedule was then updated to show minimum legal rest of 10 hours when he landed at Hill Air Force Base. The new departure time was subsequently pushed back again due to the airport being closed until 1500z. Atlas had twenty-five hours after First Officer Pocock was placed on MED to assign a new First Officer to Flight 8010 before it's scheduled departure time. Atlas's conduct is evidence not of a pilot slowdown

but of an airline without sufficient pilots, an airline that falsely categorizes delay data and lacks a scheduling department with the resources to schedule its operations.

    I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

22-Oct-2017
Dated:

Signed