IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS, INC., *et al.*, | Case No.: 1:17-cv-01953-RDM |
| Plaintiffs, | Hon. Randolph D. Moss |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

# Union Exhibit 36:

# Declaration of Michael Griffith

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ATLAS AIR, INC. and POLAR AIR CARGO WORDLWIDE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224,<br><br>Defendants. | Civil Action No. 1:17-CV-01953 RDM |

## DECLARATION OF MICHAEL GRIFFITH

I, Michael Griffith, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

1. I am employed as a pilot by Atlas Air, Inc. ("Atlas"). I have an Airline Transport Pilot license from the Federal Aviation Administration and work as an Atlas captain flying Boeing 747 aircraft. I have worked at Atlas since May 24, 1999. Since 2011, I understand that Atlas and its affiliated company, Polar Air Cargo Worldwide, Inc. (Polar) have operated separately under their own operating certificates and authorities but the pilots who fly their aircraft work under one collective bargaining agreement (CBA) and one seniority list. Moreover, despite the fact that both Atlas and Polar are collectively referred to as the "company" under the CBA, the pilots who operate their aircraft pursuant to the CBA are all employees of Atlas.

2.  I understand that Atlas and Polar (collectively, the "Plaintiffs") have filed a lawsuit against my union, claiming that the union and the Atlas pilots are engaging in an illegal slowdown. I have read Plaintiffs' complaint and the declaration of Captain Jeffrey Carlson, in support of Atlas' motion for a preliminary injunction. I understand that Captain Carlson is the Senior Vice President of Flight Operations for Plaintiffs' corporate parent, Atlas Air Worldwide Holdings, Inc. In this regard, I am one of the pilots described in Paragraph 53 of the complaint, and specifically in bullet number "10" of Paragraph 53 of the complaint. I am also described in Paragraph 23 of Captain Carlson's declaration, and specifically in bullet number "10" of his declaration. Both the complaint and Captain Carlson's declaration specifically accuse me of calling off fatigued from a flight from a September 2, 2017 flight not because I was fatigued but instead as part of a "calculated campaign to cause long delays and maximum harm" to Atlas. These accusations and allegations by Plaintiffs and Captain Carlson are not true.

3.  As I explained to Captain Kevin McCabe, who works with and assists the Atlas joint labor-management Fatigue Risk Management Committee, the reasons why I called out fatigued with respect to the September 2, 2017 flight are as follows:

> *I called in fatigued at wake up for a trip consisting of HKG-DEL-HKG in the same day with a Heavy (4 pilot) crew. The trip as assigned was approximately a 20 hr or more crew duty day depending upon the time we could get turned out of DEL and heading back to HKG. I had planned my sleep to coincide with a wake up at the scheduled time, but upon waking on my own, I discovered that the trip had been delayed by approximately 8 hrs. Realizing I would have to try to rest during this delay after having slept approximately 10 hrs already, my prospects for any kind of quality rest was slim at best. I attempted to re-enter sleep, to no avail and I was wide awake for approximately 6 hrs when I decided that my rest for such a long crew duty day would be inadequate as I would have been fully awake for 8 hrs before embarking on this trip. I called crew scheduling from my room and remained on hold for such a length of time that I sent the email below to the Chief Pilots, Scheduling and JND that I would be unable to take the flight; all to no avail. The delayed flight's wake up call came to my room at the appropriate time where I advised the scheduler that I was unable to take the trip due to the fact that I was now fatigued. He said I should have called and I pointed him to his own email box and he said he now saw the email and my report. The Scheduler read the*

*fatigue script and I commented that it seemed like he was unfamiliar with the terms as he told me to expect a new trip in 10 hrs (which is the soonest one can be assigned a new trip) to which I reminded him that 10 hrs was the soonest and I would call them back when I was fully rested.*

4. I have willingly and voluntarily consented to provide the Court with the details of my fatigue call, and consent to the use of those details in this case. I have done so because the accusations and insinuations against me personally are false and because they, along with those accusations and insinuations related to other pilots whose fatigue callouts are now also being characterized by the Plaintiffs and Captain Carlson as illegitimate, have the effect of undermining the FAA's and Atlas' fatigue risk program. That is because pilots, after reading the complaint and Captain Carlson's declaration, are concerned that they will now be punished or have their reputations tarnished for calling out fatigued.

5. Until Plaintiffs filed the complaint in this case, Atlas has never questioned the legitimacy of my fatigue callout. If Atlas thought that I had intentionally falsified my callout, it could have initiated both counseling and disciplinary proceedings against me. Atlas never initiated any such counseling or disciplinary proceedings against me, however.

6. I did not call out fatigued to cause flight delays or otherwise to disrupt the company's operations. I called out fatigued because neither me nor my crew were or would be fit for flight duty after an extensive delay.

7. I did not call out fatigued on account of pilot or peer pressure, or as part of a plan or plot by the Atlas pilots, following instructions from the Union, or pressure from the Union or any of its representatives. I called out fatigued for the reasons stated above.

8. I am also the Chairman of the Atlas pilot's Communications Committee. I have read Atlas' and Polar's claims in their complaint and Captain Carlson's allegations in his declaration in support of the Plaintiffs' motion for a preliminary injunction that Local 1224, the

Atlas Pilots Executive Committee and the Atlas pilots Communications Committee have been encouraging the Atlas pilots to engage in an illegal slowdown campaign. Those claims are not true. I have read Captain Robert Kirchner's declaration in this case discussing the Atlas pilots Executive Council's education and communication programs since January 2015 and the reasons for those programs. His explanations are correct and I adopt them as my own.

9. I also note that the Plaintiffs are relying on communications sites that are not controlled by Local 1224. These include airline pilot web forums (as repeatedly referenced by Captain Carlson in his declaration at Paragraph 54), and the "Giantcomms" Facebook page, which monitors Local 1224 communications and links to various other websites. The Facebook page, for example, links to an official communication from the Atlas pilots Communications Committee called the ATAM, a podcast. The Facebook page also provides links to another site that is not maintained by Local 1224, called "Crew Chat." Local 1224 maintains a webpage at www.apa1224.org. Communications maintained on that website are the only communications over which Local 1224 maintains control. Those communications include the above-referenced ATAM podcasts, Executive Council Chairmen and Committee reports, membership meetings (which are done by video conference in order to provide members with access and participation in those meetings when they are scattered all over the world), and "Atlas Crew Calls" (which are live, audio "town-hall" meetings for the Atlas pilots). Captain Carlson and other Atlas and Polar managers appear to have spent the better part of twenty months rummaging through various communications, some of which are official communications from Local 1224, likely obtained by management pilots who are on the Atlas pilots' seniority list and others which are not official communications from Local 1224 in order to fabricate a tale that the Atlas pilots are engaging in a concerted slowdown encouraged by Local 1224. Their actions notwithstanding, the fact

remains that the Atlas pilots are not engaged in an illegal slowdown, and neither the IBTAD, Local 1224 are encouraging them to do so.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

___24 Oct 2017___  
Dated:                                                                                   Signed