IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ATLAS AIR, INC., et al.,

    Plaintiffs,

    vs.                       1:17-cv-1953

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, et al.

    Defendants.


TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE RANDOLPH D. MOSS

UNITED STATES DISTRICT JUDGE

OCTOBER 27, 2017


Court Reporter:
Richard D. Ehrlich, RMR, CRR
Official Court Reporter
United States District Court
333 Constitution Avenue, NW
Washington, DC 20001
(202) 354-3269

Proceedings reported by stenotype.

Transcript produced by computer-aided transcription.

```
 1                    A P P E A R A N C E S

 2      FOR THE PLAINTIFFS:

 3                ROBERT A. SIEGEL
                  RACHEL S. JANGER
 4                O'MELVENY & MYERS, LLP
                  1625 Eye Street, N.W.
 5                Washington, DC 20006
                  (202) 383-5375
 6                rsiegel@omm.com
                  rjanger@omm.com
 7
                  MICHAEL G. McGUINNESS
 8                O'MELVENY & MYERS, LLP
                  400 South Hope Street
 9                Los Angeles, CA 90071
                  (213) 430-6000
10                mmcguinness@omm.com

11                SLOANE ACKERMAN
                  O'MELVENY & MYERS, LLP
12                7 Times Square
                  New York, NY 10036
13                (212) 728-5864
                  sackerman@omm.com
14

15      FOR THE DEFENDANTS:

16                EDWARD M. GLEASON, JR.
                  PAUL RUTTER
17                LAW OFFICE OF EDWARD GLEASON, PLLC
                  910 7th Street, NW
18                Suite 800
                  Washington, DC 20006
19                (202) 800-0099
                  egleason@gleasonlawdc.com
20
                  DEIDRE E. HAMILTON
21                INTERNATIONAL BROTHERHOOD OF TEAMSTERS
                  25 Louisiana Avenue, NW
22                Washington, DC 20001
                  (202) 624-6948
23                dhamilton@teamster.org

24

25
```

```
 1                    THE CLERK:  Civil Action 17-1953, Atlas Air,
 2   Incorporated, et al., versus the International Brotherhood
 3   of Teamsters, et al.
 4                    Will counsel please approach the podium and
 5   identify yourselves for the record?
 6                    MR. SIEGEL:  Good morning, Your Honor.  Robert
 7   Siegel of O'Melveny & Myers for the plaintiffs.  And if I
 8   might, may I introduce my colleagues?
 9                    THE COURT:  Of course.
10                    MR. SIEGEL:  My partner, Mike McGuinness, who will
11   help me present the case next week.  And my two colleagues,
12   Sloane Ackerman and Rachel Janger, all of O'Melveny & Myers.
13                    THE COURT:  Welcome to all of you.
14                    MR. GLEASON:  Good morning, Your Honor.  My name
15   is Ed Gleason from the Law Office of Edward Gleason.  I
16   represent the defendant, International Brotherhood of
17   Teamsters and its airline division, as well as Teamsters
18   Local 1224.  And I'm sorry I forgot a tie.  I'm sorry about
19   that.
20                    If I could also please introduce my colleagues?
21                    THE COURT:  You may.
22                    MR. GLEASON:  Okay.  Deirdre Hamilton is my
23   co-counsel.  She is from the International Brotherhood of
24   Teamsters.  And my colleague is Paul Rutter, and he's
25   counsel as well as for Teamsters Local 1224.
```

1          THE COURT:  Welcome to all of you.  Thank you.

2          MR. GLEASON:  Thank you.

3          THE COURT:  So I'm happy to take up anything the

4    parties want to take up today to help expedite the hearing

5    next week.

6          A couple of things that I do want to address with

7    respect to timing.  You've given me a list of at least some

8    of the witnesses that you intend to call, although I don't

9    know if you're going to be calling other rebuttal witnesses

10   and how much time you're going to need for a rebuttal case.

11   You've given me the time that will be necessary, I take it,

12   for the witness to summarize what is in that witness's

13   written declaration, but I don't have any sense of the time

14   that's going to then be needed for cross-examination.  So I

15   think we need to figure out how we're going to be doing with

16   time because I know I'm going to have a number of unhappy

17   people in front of me if we reach the end of the hearing,

18   and you've put on half your case, and I say, "I'm sorry.

19   That's all the time we've got," and you're done.  So let's

20   head that off now.  And if there is an issue -- and as I

21   said before, if we need to have a clock, we'll have a clock,

22   and we'll divide time.  And each side can have an equal

23   amount of time for their arguments, direct examinations, or

24   summary examinations, and cross-examinations.

25          So, Mr. Siegel, why don't you start off by letting

1    me know what you think is going to happen with respect to

2    time.  How much time are you going to need for your cross

3    and so forth or for redirects?

4           MR. SIEGEL:  Your Honor, the way I envision it

5    from our side, we will have very limited cross-exam.  We

6    have the good fortune of having declaration testimony by, I

7    think, all the witnesses for both sides prepared in advance.

8    I think the way I envision it is I have three witnesses:

9    Dr. Lee, an expert; Mr. Carlson, the senior vice president

10   of flight operations, who is the principal percipient

11   witness; and Mr. William Flynn, who is the CEO of the

12   company, who would speak briefly about some impact on

13   customer relations and irreparable injury.

14          The thrust of their direct exam is in the

15   declarations.  They would briefly summarize, but I think

16   principally they will use their time to offer some rebuttal

17   to the evidence that was presented to us two days ago, or on

18   Tuesday night by the defendants.  So I'm trying to avoid

19   recalling witnesses on rebuttal and just use their time on

20   the stand to talk about the evidence in the case, including

21   what we now see from the defendant.

22          So I think the time estimates that you have from

23   us, and the joint statement, really reflect our intent to

24   rely --

25          THE COURT:  60, 60, 30?

1          MR. SIEGEL:  That's right.  To rely on -- I mean,

2     these are extensive witnesses, but to rely on their

3     declarations as direct testimony and to use the time

4     principally to orient the Court briefly to the declaration

5     and then provide some rebuttal on what we saw from the

6     defendant.  So I think that time frame, I would try to work

7     very hard toward the time frame indicated there.

8          THE COURT:  Before you move off of that, let me

9     ask Mr. Gleason.  Do you have any objection to putting

10    witnesses on just once letting them offer both their direct

11    testimony as well as the rebuttal rather than recalling

12    them?

13         MR. GLEASON:  No, as long as I can do the same for

14    surrebuttal.

15         THE COURT:  That would make sense to me.

16         Okay.  So that deals with your likely -- what

17    about redirect?

18         MR. SIEGEL:  I was just talking to Mr. Gleason in

19    the hallway about how much cross he might do.  So, yes, I

20    might need some redirect after cross.  I just don't know

21    because I don't really know what kind of cross, but I would

22    have to reserve some minimal time.  I do not anticipate

23    extended redirect at all.

24         I should say, Your Honor, because I don't want to

25    just leave this, I think all of the rebuttal would come in

1    right there in the first presentation.  I can't say for sure

2    after we hear live testimony from the defendants, that we

3    wouldn't have to have a brief rebuttal, something that was

4    unanticipated.  But if we hear what we see in the

5    declarations, we'll be ready from the beginning.

6              I'm hoping to stick within those time lines.

7              THE COURT:  Okay.  That seems reasonable to me.

8              What about the time that you'll think you'll need,

9    then, for cross of the defendant's witnesses?

10             MR. SIEGEL:  I do not envision this from our

11   perspective as an extensive cross-examination hearing.  I

12   have already informed Mr. Gleason that with regard to some

13   of the -- about approximately 25 line pilots who filed

14   declarations about their experience with sick or fatigue, we

15   don't intend to cross them over their individual

16   experiences.  We don't view that as material to the case.

17   We've informed Mr. Gleason.  So I believe those witnesses

18   will not even be in court, approximately 25 of the pilots

19   who filed declarations on their individual experiences

20   involving a sick call or a fatigue call.

21             THE COURT:  It looks to me like they have an

22   additional nine witnesses?

23             MR. SIEGEL:  Yes.  I think excluding those, it

24   looks to me like there are at least two of the union

25   leaders, Mr. Kirchner and Mr. Wells, and their expert, Dan

1   Akins, would be the no more principal possibilities for

2   cross, although I actually do not anticipate extended cross

3   in this hearing.  So it's hard for me to estimate this

4   because I have to hear what they say, but I do not think in

5   the aggregate those three witnesses would involve more than

6   30 to 45 minutes of cross in the aggregate.

7                   THE COURT:  For all three of them or --

8                   MR. SIEGEL:  I think in the aggregate for all

9   three.  I mean, maybe I should be just careful and say 45

10  minutes.

11                  THE COURT:  So you're talking about roughly 15

12  minutes?

13                  MR. SIEGEL:  Yeah.  I just don't see them as long

14  cross-exam witnesses.

15                  THE COURT:  Okay.  Then what about the other

16  witnesses?

17                  MR. SIEGEL:  Well, at the moment, it may be that

18  we're going to proceed without cross-exam.  We certainly are

19  of the ones who are not going to be in court that we've

20  arranged with Mr. Gleason.

21                  Let me get my witness list here, and I'll check.

22  I can't say for sure, but I'm going to try to have our

23  points made by our own witnesses in rebuttal to the

24  testimony of these witnesses, and I'm going to, therefore,

25  try to avoid cross unless I think it's absolutely necessary

1    with the expert witnesses.

2            THE COURT:  So it sounds like you might -- you

3    know, if you were reserving time -- I mean, let me put it

4    this way:  If we're just sort of reserving time and doing so

5    reasonably --

6            MR. SIEGEL:  I should probably -- look, what I

7    just said is how I intend to try the case.  But to reserve

8    time, to be prudent, perhaps for cross, there should be just

9    an hour-and-a-half or something like that for the plaintiffs

10   to make sure that we don't understate the situation.

11           THE COURT:  So total cross for the plaintiffs, an

12   hour-and-a-half?

13           MR. SIEGEL:  Yeah.

14           THE COURT:  And then your total direct, I think,

15   is two-and-a-half hours?

16           MR. SIEGEL:  Right.

17           THE COURT:  With some possibility of some

18   redirect?

19           MR. SIEGEL:  That's correct.

20           THE COURT:  You're only then at, you know, maybe

21   five hours or something.

22           MR. SIEGEL:  That's right.  As we said in the

23   statement, I would like to have the opportunity to do an

24   opening statement.  There's a lot of material that's been

25   provided to the Court on short notice, and I think it would

1   be helpful to the Court if I could pull some of it together,

2   legal standard and some of the principal facts.  I put 60

3   minutes for that in the statement.

4        THE COURT:  So if you're at five hours for

5   examination, and you want an hour for an opening statement,

6   that's a total of six hours for you, which seems to me to be

7   within the bounds of the time that we have allotted.  I'm

8   looking at the list of witnesses for the defendant.  Let me

9   just quickly do my math here.

10        Correct me if I'm wrong on this, but just based on

11   my rough eyeballing it, Mr. Gleason, it looks to me like

12   you've got five hours of direct testimony?

13        Feel free to come up.

14        MR. GLEASON:  I think that is correct.  I think

15   some of the exam time -- again, it's going to be driven

16   by -- since the company is going to go first, and it will be

17   the equivalent of both direct and rebuttal at the same time,

18   you know, I have to allot enough time for us to cover a

19   great deal of ground.  So that's going to require -- I think

20   that, you know, the amount of time is a good estimate.  It

21   may go a little bit longer, but I'm going to certainly try

22   to condense that.

23        You know, we have a lot of claims that have been

24   brought against us, and we have a number of witnesses that,

25   you know, can only address certain of them.  And then we

1    have others like, particularly Mr. Wells, Mr. Kirchner,

2    they're going to have, I think, a lot of ground to cover.

3              THE COURT:  You'll have to make just a judgment

4    for yourself.  You know how much time we've set aside for

5    the hearings in this matter.  I'm hearing from the plaintiff

6    that they think that they can make their statements and, you

7    know, put on their case and do their cross-examination in

8    roughly six hours.  You're at five hours.  I assume you want

9    an equal opening.  Do you want an hour for opening as well?

10             MR. GLEASON:  I had envisioned this case, when we

11   were together on the 29th of September, that we were going

12   to just throw our witnesses up, and I really wasn't

13   anticipating much of an opening because you're going to have

14   so much evidence to deal with anyway.

15             Given Mr. Siegel's desire for an opening, I likely

16   will have to do one.  I think I've allotted myself 60

17   minutes.  I don't think that you would want to hear me

18   prattle on for that long.  So if I do an opening, I'm going

19   to try to do it in about 30 minutes because, quite frankly,

20   a lot of my opening will likely deal with the law.  And

21   since we have post-hearing briefs in this case, I'll deal

22   with it there.  But there are a few things where I'm

23   effectively going to want to -- or at least try to

24   effectively -- to set the table and the law going into the

25   hearing.

1          THE COURT:  That's fine.

2          MR. GLEASON:  Your Honor, my biggest concern is

3     going to be cross-exam.  I don't know.  The good news is

4     we've only got a few of the witnesses, but their witnesses,

5     again, have covered an incredible amount of ground, and I'm

6     going to have to -- I cannot stand here and tell you how

7     long it will take me to cross-examine particularly Captain

8     Carlson and also Dr. Lee.

9          THE COURT:  Here's the thing about this.  I think

10    you're the one who is going to have to police this yourself

11    because you're going second in the case, and so if we run

12    out of time, it's going to hurt you.

13          Mr. Siegel is telling me that he thinks he can do

14    what he needs to do in six hours in the case, which is less

15    than half the time that we'll have for the hearing.

16          So if you find that you've run out of time, it's

17    because you haven't sort of allocated your time in the most

18    efficient way.  So I think you're just going to have to

19    monitor that as you go.  And if you end up doing, you know,

20    a six-hour cross-examination of a witness, you may find that

21    you just don't have time to put on some of your witnesses

22    because we'll be out of time at that point.

23          MR. GLEASON:  Let me please address that.  If I

24    have a cross-exam that's going to take time, it's not

25    because I'm -- obviously, as an officer of the Court, I'm

```
 1    not trying to run out of clock.

 2              THE COURT:  I'm not suggesting that.  All I'm

 3    suggesting is you may have to pick your issues and pick your

 4    fights.

 5              MR. GLEASON:  My problem is with -- where I see

 6    the law is, obviously, it's the plaintiffs' burden, and it's

 7    a heavy burden under the Norris-La Guardia Act for them to

 8    bear.  I have to defend ourselves, and I think I have --

 9    obviously, I have a due process issue here.  We have been

10    jammed up with paper coming out our ears.

11              THE COURT:  I don't think you have a due process

12    issue with a preliminary hearing where I'm giving you --

13    Kristen, how much time have we set aside for this?

14              I think we're talking about probably -- this is

15    just back of the envelope, but, you know, 10 or 11 hours of

16    time to put on a witness on a preliminary injunction.

17    That's not a due process violation.

18              MR. GLEASON:  And I think I can do it, but it

19    depends upon the -- look, they've covered a great deal of

20    ground again, and they've covered a great deal of ground

21    with a lot of allegations that we have had to chase down

22    because they didn't even provide the details.  We have a lot

23    of evidentiary issues to deal with when we get to that.  I'm

24    going to do my absolute best -- and I understand the Court's

25    instruction on the time -- and I'm going to do my absolute
```

1    best, and I will manage my time.  Again, I'm not here to

2    filibuster.

3              THE COURT:  I'm not telling you that I'm going to,

4    you know, have harsh words for you.  I'm just telling you

5    that you may run out of time, and I'm going to say, "We're

6    done."  And we'll be done when we're done, and you just need

7    to kind of allocate your time appropriately and make your

8    choices about how you want to spend that time.  That's all

9    I'm saying.

10             MR. GLEASON:  And I appreciate that.  I truly do.

11   I have to, from where I stand as the defendant in the

12   Norris-La Guardia Act issue dispute here, I have to defend,

13   you know, my client to the best of my ability and within the

14   very strict confines of that statute.

15             THE COURT:  Okay.

16             MR. GLEASON:  That's really all I have to say on

17   that part.

18             THE COURT:  Fair enough.

19             Did the parties propose timing for the post-trial

20   briefs of when you're proposing to submit those?

21             MR. GLEASON:  No, not yet.  Actually, we both

22   discussed -- and recognize we have to file briefs.  I have

23   not discussed timing of that at all.

24             THE COURT:  Do the two of you want to confer about

25   that first privately, or do you want to just address that

1    now and get a schedule now?

2           MR. GLEASON:  I don't think I could possibly --

3    look, we have a lot of paper.  We still have to go through a

4    transcript.  I mean, if we could -- I don't think I can give

5    you a good answer today as much as I -- you know, at the

6    close of the hearing, I'll know how big the record is going

7    to be, how much more it's going to grow.

8           THE COURT:  Okay.  I'm not sure at the end, but

9    some time in the course of the hearing we can talk about

10   sort of the schedule for the post-hearing briefs.  I would

11   encourage the two of you talk about it beforehand because,

12   otherwise, I'm just going to enter an order telling you what

13   it is.

14          MR. SIEGEL:  May I just be heard on that?  I'm

15   usually always asking for plenty of time to write a brief.

16   But in this case, certainly from the plaintiffs' standpoint,

17   Your Honor, and without imposition, obviously, on the

18   Court's schedule, we are going to be asking for expedited

19   briefs and then asking the Court for whatever possibility

20   there is for an expedited ruling given the subject matter of

21   the lawsuit and the preliminary injunction that we're

22   seeking.  So I'll be glad to talk to Mr. Gleason about that.

23   But to some extent in these cases, justice delayed is

24   justice denied.  So we are going to be seeking an expedited

25   schedule.

1       THE COURT:  I understand that we're on a

2   preliminary injunction hearing, that that means things need

3   to move along.

4       MR. GLEASON:  It may help Your Honor.  Right now

5   we have currently on the admitted order of November the

6   10th response for filing a responsive pleading.  That's

7   the time that I would have to take to write another brief.

8   I may ask you for an extension.  I haven't discussed that

9   with Mr. Siegel, but if I'm going to be having to write an

10  expedited brief, and I get that it's a preliminary

11  injunction, I'm going to need all the time I can use to be

12  able to cobble together a real brief that -- you know, a

13  thorough brief that can adequately address the issues.

14      THE COURT:  Any objection to extending the

15  defendants' time to file a responsive pleading?

16      MR. SIEGEL:  I have no objections, Your Honor.

17  There was the subject of a Rule 65 consolidation that was

18  raised in our status conference, and Mr. Gleason has

19  informed me that the union would oppose that because they

20  would want to, they say, take more discovery.  I'm inclined

21  to still be presenting that issue to the Court.

22      I think Your Honor indicated that the Court might

23  consider that at the end of the hearing.  We have had

24  discovery in the last three or --

25      THE COURT:  Just to clarify.

1          MR. SIEGEL:  I'm sorry.

2          THE COURT:  You said at the end of the hearing --

3     I do know that the rule says before or after the beginning

4     of the hearing on a motion for preliminary injunction, the

5     Court may advance the trial on the merits and consolidate it

6     with a hearing.

7          I do worry that there's just a notice issue here,

8     and that if it is going to be consolidated with the trial,

9     that the parties need to know that this is, in fact, the

10    trial on the merits because it may effect how they put their

11    cases on.

12         MR. SIEGEL:  I agree with the Court.  I've been

13    through that before where we know in advance.  We obviously

14    can have no delay in the preliminary injunction hearing next

15    week.  We did have a preliminary injunction discovery

16    between the parties.  Defendants did serve 65 document

17    requests and interrogatories.  We've answered them.  The

18    defendants have provided documents to us.  I'm sure that

19    Mr. Gleason would say there's a lot more discovery that can

20    always be done that is not done on an expedited, preliminary

21    injunction basis.  I understand that.

22         The real question is, I think, from a question of

23    need and judicial economy, whether it would be necessary

24    after this hearing and after the expedited discovery I just

25    described to reengage for a second trial.

1    THE COURT:  Well, that raises a related issue that

2    I've been thinking about a little bit, which is -- I'm not

3    quite sure how serious the parties are about this, and I

4    haven't actually gone through and counted, but it looks to

5    me like the parties have raised several hundred evidentiary

6    objections in this case.  My understanding of the law is

7    that if this is a preliminary injunction, the Rules of

8    Evidence do not apply in the same strict standard they do at

9    trial.

10    If this is a trial, and you want a decision on a

11    trial basis, the Court may have to go through and rule on

12    several hundred evidentiary objections.  I can tell you, if

13    that's going to be the case, you're not going to get a

14    decision super fast.

15    MR. SIEGEL:  Mr. Gleason would have to comment on

16    how serious his objections were.  I got them last night, and

17    I saw, I think -- and I don't want to overstate it, but it

18    looked like they objected to every exhibit and almost every

19    paragraph of every declaration.  So I would hope that's a

20    starting point and not an ending point on their part.  I

21    don't think their objections, at least at that level, are

22    warranted.

23    We made some hearsay objections.  Frankly, in a

24    bench trial, with some of these hearsay objections, I would

25    rather get to the hearing and get the injunction resolved

1    one way or the other rather than take a lot of time worrying

2    about things like hearsay in a bench trial.

3              THE COURT:  Right.  And let me ask both parties

4    this:  I've done some looking into the law in this, and I

5    can tell you that Wright and Miller at least, and some

6    district court cases from this jurisdiction, Court of

7    Appeals cases from other jurisdictions say that the Rules of

8    Evidence do not apply in the same manner to a preliminary

9    injunction hearing as they do either on a summary judgment

10   or on a motion -- or at trial.  And that makes sense to me,

11   particularly when you do have a bench trial, and I can

12   consider the value of the evidence and decide what it's

13   worth.

14             My inclination would be not to be going through

15   and ruling on, you know, several hundred of evidentiary

16   objections in this context.  If either party thinks I'm

17   wrong about the law in that, I would request that you

18   actually bring that to my attention and bring the authority

19   to my attention showing that the Rules of Evidence do apply

20   in the same way to a preliminary injunction hearing as they

21   would for trial or summary judgment.

22             MR. SIEGEL:  I don't think the Court is wrong, and

23   I don't have a problem with that approach.

24             THE COURT:  Let me ask Mr. Gleason.

25             MR. SIEGEL:  Yes.

1          MR. GLEASON:  Your Honor, I don't think you're

2     wrong either with respect to a PI hearing.

3          We've had to do -- you've got the objections, a

4     significant number of mostly hearsay, foundational

5     objections on our side because, frankly, you know, we have

6     been working from an assumption from what we heard on the

7     29th that the plaintiffs intend, or at least contemplating

8     seriously to file a Rule 65 consolidation.

9          I think the Court recognizes as well, obviously,

10    that if it's going to be a trial on the merits, yeah, I'm

11    deadly serious with my objections.  It's a big difference.

12    But if this is going to be a preliminary injunction, then I

13    think that's more of a relaxed, if you will, evidentiary

14    standard, and we can live with that.

15         THE COURT:  I don't know what's going on in the

16    collective bargaining process at this point in time, but is

17    there a difference here, or will there be a meaningful

18    difference between -- a real-world difference between a

19    preliminary injunction and a permanent injunction?

20         So if you go back -- let's say you get a decision

21    from me sometime in November.  You then go back and say,

22    Fine.  I've got the decision on the preliminary injunction.

23    I have no idea now what that decision would be, but yes or

24    no.

25         And then the parties say, "Okay.  Let's go do

1    additional discovery."

2          You know, a traditional discovery track might be,

3    you know, six months to a year for discovery.  Preliminary

4    injunction is in effect during that period of time, or if

5    there is one, either side can actually take an interlocutory

6    appeal.  And if you've got legal issues, and if I get the

7    law wrong, the Court of Appeals will correct me on that.

8          But if you then set it down for a trial date -- I

9    mean, I'm just thinking off the top of my head, but a trial

10   date, I assume, would probably be a year-and-a-half, you

11   know, or conceivably longer from now.

12         In the real word, is there a difference between --

13   I mean, is this case ever really going to go to trial, I

14   guess is my question, or is a preliminary injunction, as a

15   practical matter, going to resolve things?  And by the time

16   that's all resolved, that the parties -- there's either

17   going to be a collective bargaining agreement or something

18   else along the line.

19         MR. GLEASON:  In my experience, in the real world,

20   there is a difference, and it starts with the fact -- again,

21   in a preliminary injunction, obviously we can take an

22   interlocutory appeal.  We have that right under Section X of

23   the Norris-La Guardia Act as well.

24         If the Court were to rule against the defendants,

25   we will -- and I'm not putting words in your mouth, but we

1     would likely take it up on appeal.

2              THE COURT:  I suspect either side probably would.

3              MR. GLEASON:  And so I have to, from my

4     perspective, on behalf of the defendants and the Teamsters

5     on this, if the Court were to rule against us, I'll have a

6     -- you know, obviously the procedure, I would ask you to

7     stay your PI order, and likely you won't, but that's my

8     experience with other judges, and then I would have to bring

9     it up.

10              In the meantime, I likely would be back, based on

11    my experience, with other -- particularly airline cases,

12    I'll be back in front of you probably within a few days when

13    that order is used as leverage against us to hold us in

14    contempt.

15              And the problem I have --

16              THE COURT:  That's separate from the question --

17              MR. GLEASON:  But the problem I'm having is all of

18    the legal and the procedural stuff, it so thoroughly

19    distracts collective bargaining that it frankly undermines

20    it.

21              The second problem I have in terms of real world

22    with a real trial, like on the merits trial, is that we've

23    had to, in three weeks, you know, produce discovery over our

24    objections of which we have -- I can handle that either now

25    or in the papers later on over the union member privilege

objections we've made, but also we had to pick and choose

our battles, too.  We've gotten a mountain of discovery that

we can't -- I couldn't possibly in two weeks --

THE COURT:  I think you're answering a different

question than the one I was posing.  What you're addressing,

I think, is the question as to whether there should be

consolidation or not, and I hear you on that, and I

understand your position on that.

The question I'm asking is a different one, which

is:  I don't know what's going on with the timing with what

happens in the collective bargaining process.  I don't

personally have a good sense of whether these types of labor

disputes take years and years to resolve, and, you know, it

may be that the union and Atlas are still negotiating three

years from now over a collective bargaining agreement, or

whether, in the real world, these things typically get

worked out one way or the other in a year or so.  And if

we're not going to get to trial in a year or so, we may only

have a preliminary injunction before the case is then mooted

out by whatever --

MR. GLEASON:  I understand, Your Honor.  When I'm

working with clients, the Teamsters under the Nation Labor

Relations Act with the largest union contract in the world,

our ground service UPS contract, we get it done in about a

year and maybe a year-and-a-half.

1          When I work with airlines and airline locals in

2     this industry -- you may remember one client was with the

3     Teamsters, and it had to do with Kalitta last Thanksgiving,

4     that took us five-and-a-half years.

5          Bargaining under the RLA, it just never ends.

6     Instead, it's always -- it just finds some other way and

7     some other life to continue in negotiations.

8          THE COURT:  You just don't know is the bottom

9     line?

10          MR. GLEASON:  If I were a betting man, after 30

11     years of this, I would say, you know, contract negotiations

12     with this company, as virtually every other one I've dealt

13     with in the airline industry, we're not even close.

14          I don't even see it happening.  I mean, we try.

15     We absolutely try, but it takes two to dance, and it

16     takes -- you know, my experience is usually the carrier is

17     the one who wants to maintain what it calls its status quo,

18     which means, you know, obviously, there's a lot of practical

19     issues with that with respect to the terms of the contract.

20          So, no, I don't think that an order in this is

21     going to help anything other than potentially if it goes

22     against us, it likely will just create more -- and I don't

23     mean this disrespectfully to the Court or to the legal

24     process, but it's just used as another side show, frankly,

25     to avoid real collective bargaining.

1          THE COURT:  Okay.

2          MR. GLEASON:  I don't mean that in a disrespectful

3     way, but that's just my real-world experience in dealing

4     with this.

5          THE COURT:  That wasn't really the question I put

6     to you, but that's fine.

7          MR. GLEASON:  Okay.

8          THE COURT:  I'm just trying to understand timing

9     here.  That's all.

10          MR. GLEASON:  Timing of the contract negotiation,

11     I don't know, but my best guess is it's going to take a long

12     time.

13          THE COURT:  Okay.  All right.  Thanks.

14          MR. SIEGEL:  Your Honor, if I just might share my

15     experience in cases to directly answer your question.  I

16     have a different reaction than Mr. Gleason.

17          I have, for good or bad, handled many of these

18     injunction cases that are in the cases, and I have never had

19     a second stage trial after a preliminary injunction hearing.

20     Either they have been consolidated under Rule 65, or more

21     frequently, once the Court issues a decision that says a

22     party is likely to prevail on the merits based on evidence

23     that has been presented, there has been a stipulation that

24     the preliminary becomes a permanent, and it goes up on

25     appeal.

1          The last, just as a reported case two or three

2    years ago in the Charlotte Federal Court, *U. S. Airways vs.*

3    *ALPA,* that's what happened after a preliminary injunction

4    issued against the pilots' union on the very same issues.

5          After some struggle and review, but reading the

6    Court's decision -- and the same thing happened more

7    recently in Spirit Airlines versus the pilots' union where

8    we got a TRO, and then there was a stipulation.

9          So I personally have then seen collective

10   bargaining proceed and the parties reach agreement.  I just

11   have to say that.

12         And in June of this year, this union reached an

13   agreement with the company to establish a protocol for

14   collective bargaining and then put out a note to the union

15   that says that this new protocol, we have a negotiation

16   process now in place which greatly enhances the likelihood

17   that we will indeed succeed in reaching an agreement through

18   direct negotiations.

19         That's what the union sent to the pilots in June

20   of this year.  This is all crystal ball and prediction, but

21   I just wanted to respond to your question.

22         MR. GLEASON:  I feel compelled, Your Honor, to

23   respond to that.  We reached an agreement after the company

24   stopped negotiations in March of 2016.  They filed a lawsuit

25   against us.  They filed a grievance arbitration against us.

1    And it was actually after that length of time it took from

2    March of 2016, they also advised the National Mediation

3    Board that they shouldn't even conduct mediation.  So you're

4    not hearing the full story by any stretch.

5        We still have outstanding litigation in New York

6    that this company has brought against the Teamsters to

7    compel us to do what they want to do.  It's all leverage.

8        So there's so much that goes on in this, including

9    the fact that that agreement that Mr. Siegel just pointed

10   out is an agreement not for the Section 6 negotiations that

11   we started out with in 2016, it's to do an, in a voluntary

12   basis, to try to negotiate what they call a joint collective

13   bargaining agreement with a carrier that's not even before

14   you.  That's Southern Air.

15       THE COURT:  Let me ask you this:  What more would

16   you need to consolidate and just to do this once?

17       MR. GLEASON:  Oh, my goodness.  Look, I've got

18   40,000 plus pages.  I got 9,000 pages at least just on

19   mechanicals for two airlines alone.  I got two experts.  But

20   Mr. Akins, in particular -- to sift through all of the

21   material that was placed, you know, on our laps in this last

22   three-week period, we, again, had to choose our battles.  It

23   would take a lot more time just for our expert alone that --

24       THE COURT:  How much?

25       MR. GLEASON:  Well, when I was here, and I told

you I was prepared to do a Rule 65 consolidation, I was

ambitiously telling you I would need a good, solid 60 days.

Heads down, just working to do true discovery, not this

three-week abbreviated schedule, but three weeks where we

got dumped on with so many pieces of paper and data that

wasn't even compiled correctly, there's just no way on God's

green earth I could do that.

THE COURT:  Okay.  I'm pretty confident that

Mr. Siegel would say that he's not going to wait that long

on a preliminary injunction, and he can't do so.

MR. SIEGEL:  Yes, Your Honor.

THE COURT:  I think at this point, you know, I'm

sorry to say this because it just means more work for the

Court, but it sounds to me like we're probably not in a

position to consolidate, and we'll have to go forward with

the preliminary injunction; see how that turns out.  As I

said before, I have no idea how that's going to come out.

See what happens with that, and then we'll see where we go

from there.

I think that other things just come up that we

ought to raise.  I would request that when you're examining

witnesses, that if you want to leave the podium and approach

the witness, you ask permission to do that.

I would request that witnesses who are not

testifying be excluded from the courtroom except for, if

1     they were a representative of each of the clients who was

2     their representative, they would be entitled under the

3     rules, I think, to be in the courtroom during the entire

4     proceeding, if that's something you wanted to do.  But other

5     witnesses ought to be excluded during the proceeding.

6            Once a witness takes the stand and starts to

7     testify, I would request that no counsel confer with that

8     witness one way or the other about the substance of their

9     testimony until their testimony is complete in the matter.

10           I think since we're not going to have a jury

11    present, there's not a whole lot more to say about sort of

12    conduct in the courtroom.

13           Anything else that the parties want to ask me

14    about how I tend to proceed?

15           Yes, Mr. Gleason.

16           MR. GLEASON:  This is just a follow-up from your

17    instructions.  The only thing, Your Honor, I can handle --

18    for the most part I can handle Elmo, but I would probably

19    need a pilot, one of my guys, to actually be able to work a

20    computer for audio/visual.  I don't know which one -- who is

21    going to be the most facile with that standing here today.

22    I would only ask that I have a representative.  Plus I'm

23    going to need somebody to help with the computer if we put

24    things up on the screen.

25           THE COURT:  You say one of your witnesses?

1          MR. GLEASON:  It may be a -- see if it's one who

2     won't testify, obviously, but it may be one who does.

3          THE COURT:  All I care about is someone who is

4     testifying.  If it's somebody who has submitted a

5     declaration even, and they're not going to be subject to

6     cross-examination -- I just don't want anyone's testimony to

7     be affected by what they're hearing in the courtroom.

8          MR. GLEASON:  I mean, I'll do my best.  I can't

9     tell you which is the most facile one.  Mr. Green, he may

10    well testify.  He's one of our -- he may have to testify.

11    Right now I think -- I'm not sure that Mr. Siegel actually

12    had stipulated to his declaration.

13         MR. SIEGEL:  The Court's rules I would abide by.

14    We're not going to cross-examine him, if that's --

15         MR. GLEASON:  I think that would make life easier.

16         THE COURT:  If he's not going to take the stand,

17    and he's already submitted his declaration, then it's fixed.

18    That's not an issue.

19         MR. GLEASON:  Right.  And if we have problems, if

20    he's not the most facile, I'll deal with that in the morning

21    on Tuesday, Your Honor.  Thank you.

22         THE COURT:  Okay.  Have you had your technology

23    tutorial?

24         MR. GLEASON:  Yeah.  But I think we're going to

25    have to have -- I'm a slow learner.  I think we're going to

1       try to indulge upon your chambers for another meeting on

2       Monday.

3                   THE COURT:  Okay.  And I would ask all the parties

4       here:  We have an extraordinary staff here in the courthouse

5       with the technology people here present in the courtroom.  I

6       would request that you follow their instructions and do what

7       they ask you to do.  They're extremely professional and good

8       about what they do, but they need to have some control over

9       the situation.

10                  MR. GLEASON:  They've been invaluable, and thank

11      you, because I'm a very slow learner on this technology

12      stuff.

13                  THE COURT:  Okay.  Thank you.

14                  Anything further you think would be helpful to

15      raise today?

16                  MR. SIEGEL:  Your Honor, I envision that we'll

17      have exhibit books up for the Court.

18                  THE COURT:  Both sides should have exhibit books

19      in two sets.

20                  MR. SIEGEL:  Two sets.  We have ours today to

21      provide to the Clerk.

22                  THE COURT:  I should clarify actually.  We need

23      three sets.  We need one that will be the official set, that

24      will be the official exhibits.  Then I need one for my law

25      clerk, and one for me.

1          MR. SIEGEL:  Okay.  We have three.  So we'll be

2     able to provide that today.

3          We may work just right off the exhibit books.  I

4     may not do much with the audio/visual because I think it

5     might be a bit easier.

6          But if we do that, I'll rely on the Court

7     technicians to help me.

8          THE COURT:  Are the exhibits prenumbered?

9          MR. SIEGEL:  Yes.  All the exhibits are numbered.

10    So we would have a book, tab book with exhibit numbers.  I

11    think I would be directing witnesses, and the Court would be

12    able to look at an exhibit by number, by tab.

13         THE COURT:  Okay.  Is the same thing true for

14    defendants?  Will you have three exhibit books of your

15    exhibits for the Court?  One will be the official exhibits

16    in the case which will either, you know, be admitted or not,

17    then one for me, one for my law clerk with tabs by exhibit

18    number?

19         MR. GLEASON:  Yes.

20         THE COURT:  Okay.  Good.

21         MR. GLEASON:  May I?  The only other issue is I

22    still have to -- I just don't want to mislead the Court in

23    terms of who we would have as the most facile pilot.  I'm

24    just going to have to deal with that.  And, Your Honor, if

25    you can indulge me on this.  I'm going to do my best to make

1    it so that somebody who is not going to testify, or the

2    plaintiffs have already agreed not to.  I believe Mr. Green

3    has not been agreed upon unless they've changed their minds.

4    I think he would have to testify as it's currently set up in

5    the pretrial.

6              THE COURT:  I'm sorry.  I'm not following you.

7              MR. GLEASON:  Mr. Green, the gentleman -- he's a

8    pilot.

9              THE COURT:  To provide his direct?  Is that what

10   you're saying?

11             MR. GLEASON:  Yes.  Currently, I don't believe --

12   I think Mr. Siegel was just mistaken.  I think he's thinking

13   about another pilot, and that's -- Mr. Green is not the guy

14   he was thinking about.

15             Right now I believe Mr. Green is supposed to

16   testify.  James Green.

17             THE COURT:  I'm just giving them a moment.

18             MR. GLEASON:  Yeah.  I don't know if we can

19   resolve it right now, but I will do my best not even to have

20   an issue to resolve.

21             THE COURT:  I appreciate that.

22             So why don't I let the two of you confer about

23   this.  If there's an issue, yeah, you're welcome to bring

24   the issue to me.  Given the fact that the testimony is

25   coming in in the first instance in written form, I think

1    it's probably less of an issue that it might be in other

2    contexts.

3            As somebody who flies, I'm almost hopeful that

4    most pilots are pretty facile with working the electronics.

5            MR. GLEASON:   I hope so.

6            If I could just indulge the Court?

7            THE COURT:   Yes.

8            MR. GLEASON:   If we're in a PI setting and not a

9    Rule 65 consolidation setting, obviously the evidentiary

10   objections and all that stuff, I think that does probably

11   help to facilitate the hearing.

12           Just thinking out loud.  I do have a number of

13   objections that likely we can address.  You know, obviously

14   just more in court but as well as in our papers.

15           THE COURT:   Let me ask this with respect to the

16   objections.  Given the fact that -- I think everyone agrees

17   that the law provides that the Rules of Evidence don't apply

18   in the same strict manner in a preliminary injunction

19   setting as they do for a summary judgment or at trial.  And

20   given the fact that I've got hundreds of objections in front

21   of me, what I would request you do is if there's something

22   where you think that there is a real question about the

23   actual reliability of the evidence, that you bring that

24   separately to my attention.  You can do it by way of an

25   objection.

1          In the course of the hearing, if there is an

2    exhibit the other side is relying on, you know, it's a

3    significant exhibit in any respect or material in any

4    respect, and you think, "Boy, this just isn't reliable,"

5    tell me.

6          There's not a jury here.  You can say, you know,

7    "Your Honor, we've got a concern about this.  This is double

8    hearsay.  This is triple hearsay.  We actually don't think

9    that this is the right version of the document.  This is an

10   earlier version of it, and there was a subsequent version,

11   and here it is, Judge."

12         So if there's something that I should think about

13   that goes to the reliability of the evidence, expressly

14   raise that with me because, otherwise, I'm not going to be

15   going through and saying, you know, Rule 402, 403, hearsay,

16   for several hundred objections and just ruling on those

17   because that's not efficient.  It's inconsistent with sort

18   of the notion of a preliminary injunction I have to do that.

19         MR. GLEASON:  I appreciate that.  And I do truly

20   do in terms of guidance.  It will help to facilitate.  And,

21   again, as long as I'm going to be able to make my objections

22   in writing, you know, in the post-hearing brief because we

23   have a number of --

24         THE COURT:  That's fine.  But if I get a

25   post-hearing brief from you that says, "Here are just a mere

1    50 evidentiary objections," it's not going to help me.  What

2    I really need to know is they say this is -- you know, these

3    are the key documents in the case, and here's a real problem

4    about the reliability of these documents.  This is why, even

5    though the Rules of Evidence don't apply in the same fashion

6    to a preliminary injunction, why, Judge, you ought not rely

7    on this because there actually is not a reliable document,

8    and you just need to explain that to me why that is.

9         If I just get a list saying here are dozens and

10   dozens of exhibits, and, you know, 401, 402, 403, 803, you

11   know, I'm just going to -- I'm not going to be able to do

12   anything with that.

13        MR. GLEASON:  For instance, the customer

14   complaints.  Everything is redacted, right?  So how do I

15   defend myself against a redacted customer complaint that's

16   absolute hearsay?  I mean, that's the type of thing I'm

17   envisioning.

18        THE COURT:  Well, absolutely hearsay --

19        MR. GLEASON:  At least double hearsay.

20        THE COURT:  It might be double hearsay, but if you

21   actually had the email from a customer saying, "Here's my

22   complaint," that would be just single hearsay.

23        MR. GLEASON:  I was thinking -- I'm sorry -- as

24   well.  There was one, a military wife or something like

25   that, everything is redacted.

```
 1              THE COURT:  This may or may not end up being

 2    central to anything, but if there's a problem, let's discuss

 3    it and bring it to my attention.  I hope we can build enough

 4    time into the hearing so you can do it because what I would

 5    like to be able to do is -- you can put it in your briefs,

 6    but what I would much rather do is hear from you on that,

 7    and you say "Judge, look.  Here is an exhibit.  It's a

 8    complaint.  It's redacted.  What am I to do with that?"

 9              And if it turns out that the redaction is the

10    person's email address, I'm going to say, you know, "That's

11    personal information.  I understand why they redacted it.

12    It doesn't seem to undermine the evidence."

13              On the other hand, if the redaction is, "I was on

14    flight blank, and pilot blank said blank to me, and I was

15    really angry about that," I'm going to say, well, that

16    evidence isn't worth very much because I don't even know

17    what was said or to whom.

18              MR. GLEASON:  Right.  Understood.

19              And the reason I'm raising this issue now again is

20    because, again, I truly understand in a regular, if you

21    will, Rule 65 PI hearing, there are relaxed Rules of

22    Evidence.  We understand that.  But I'm also dealing with

23    the intersection of Rule 65 and the Norris-La Guardia Act,

24    Section I that says, you know, it has to be an issue -- an

25    injunction can only be issued upon strict conformity with
```

1    the provisions of that statute.   Strict compliance.

2           THE COURT:   Is there something in that statute

3    that says hearsay evidence can't be considered?

4           MR. GLEASON:   No, it does not.   That's what I'm

5    saying.   But it does require strict compliance with the

6    provisions itself of the statute.

7           THE COURT:   If there's something in the statute

8    that we're not complying with, you should bring it to my

9    attention.

10          MR. GLEASON:   So from my perspective, you know, if

11   it's a lot of hearsay that's going in, and it's unreliable

12   like the example you just cited, Your Honor, I know you're

13   going to be able to take it for the weight that it's

14   offered.   I'll have to argue, though, that it's not strict

15   compliance with the Norris-La Guardia Act in my papers.

16   That's all.   In terms of -- not you, I'm talking the

17   plaintiffs that they didn't strictly comply.   That's all.

18          THE COURT:   Okay.   Well, you're welcome to make

19   whatever argument you want to make.   I mean, I think we're

20   in agreement with respect to what the law is with respect to

21   the evidentiary issues, and I'm telling you with respect to

22   process, and for me, that if you do think something is

23   unreliable, I'm requesting you to explain that to me in the

24   hearing, in the course of the hearing and explain to me why

25   you think it's unreliable so we can address it and not just

1  give me a list of objections.

2           MR. GLEASON:  Okay.  Thank you.

3           THE COURT:  Okay.  Thank you.

4           Mr. Siegel?

5           MR. SIEGEL:  Just make one suggestion connected

6  with this so we cannot delay the hearing.  I would be

7  willing to work with Mr. Gleason between now and Tuesday to

8  identify any particular documents that would fall into the

9  category that Your Honor has just mentioned as being

10  particularly unreliable so that we can be ready, and we can

11  deal with it quickly and not by surprise.

12           THE COURT:  I mean, I would encourage the parties

13  to do that, again.

14           And, Mr. Gleason, this I think may be something

15  that would work to your favor given the fact that I think

16  you probably have a longer case to put on and more evidence

17  you want to offer, and I just don't want the clock to run

18  out on you.  And if I find that I'm spending -- if I end up

19  spending three hours of your limited time dealing with

20  evidentiary objections, that's just not the best use of your

21  time at the hearing.

22           MR. GLEASON:  I don't want to waste the Court's

23  time or, frankly, the time that I don't have because we're

24  the ones that -- you know, I don't have that much behind me

25  in terms of, you know, trying to deal with a mountain of

1    paper and all these evidentiary issues that, you know, I'm

2    going to have to -- I've already had to be confronted with.

3    I can handle a lot of this, I believe, just on cross-exam.

4           THE COURT:  Okay.  That's fine.  That's often a

5    good way to bring up the unreliability of some evidence is

6    through cross-examination.

7           You know, this is a bench trial, and you are in a

8    position which -- you know, it seems improbable at the end

9    of the day that I'm going to end up, you know, basing my

10   decision on a piece of evidence that when you look at it

11   just doesn't appear to be terribly reliable.  There's heavy

12   redactions in it, or I can't really tell what it is, or it's

13   remote.

14          So, yeah.  Okay.

15          MR. SIEGEL:  Thank you, Your Honor.

16          THE COURT:  Okay.  Anything further that either

17   party wants to raise today?

18          MR. SIEGEL:  No.  I thank you very much for your

19   time today and very helpful.  Thank you.

20          THE COURT:  Okay.

21          MR. GLEASON:  I think that does it for today.  I

22   mean, I think everything else -- the only couple of the

23   logistics issues we'll work out, Your Honor, and we'll see

24   you on Tuesday.

25          THE COURT:  One other thing that I think the

1    parties can do that may be helpful, and I'm not quite sure

2    who our court reporter is going to be for the hearing -- it

3    may be Jeff -- but I'm confident that he would appreciate a

4    list of any acronyms, because he's going to need that from

5    you before or after.  And if you're talking about, you know,

6    the AMZT, or whatever it might be, and he's trying to get

7    that down, if you can give him a list of acronyms, spellings

8    of names, that's going to make his life much easier, too.

9              MR. GLEASON:  That's a great idea.

10             THE COURT:  Okay.  All right.

11             MR. SIEGEL:  Thank you, Your Honor.

12             THE COURT:  Thank you.  We will see you next week

13   then.

14             (Hearing concluded.)

CERTIFICATE OF REPORTER

I, Richard D. Ehrlich, a Registered Merit Reporter and Certified Realtime Reporter, certify that the foregoing is a true, complete, and accurate transcript of the proceedings ordered to be transcribed in the above-entitled case before the Honorable Randolph D. Moss, in Washington, D.C., on October 27, 2017.


s/Richard D. Ehrlich  October 30, 2017
_____
Richard D. Ehrlich, Official Court Reporter

**MR. GLEASON:**
**[52]**
**MR. SIEGEL:**
**[33]**   3/5 3/9
5/3 5/25 6/17
7/9 7/22 8/7
8/12 8/16 9/5
9/12 9/15
9/18 9/21
15/13 16/15
16/25 17/11
18/14 19/21
19/24 25/13
28/10 30/12
31/15 31/19
31/25 32/8
39/4 40/14
40/17 41/10
**THE CLERK:**
**[1]**   2/23
**THE COURT:**
**[81]**

**0**

**0099 [1]**   2/19

**1**

**10 [1]**   13/15
**10036 [1]**
2/12
**10th [1]**   16/6
**11 [1]**   13/15
**1224 [2]**   3/18
3/25
**15 [1]**   8/11
**1625 [1]**   2/4
**17-1953 [1]**
3/1
**1953 [2]**   1/7
3/1
**1:17-cv-1953
[1]**   1/7

**2**

**20001 [2]**
1/22 2/22
**20006 [2]**   2/5
2/18
**2016 [3]**
26/24 27/2
27/11
**2017 [3]**   1/15
42/8 42/10
**202 [4]**   1/23

**212 [1]**   2/13
**213 [1]**   2/9
**25 [3]**   2/21
7/13 7/18
**27 [2]**   1/15
42/8
**29th [2]**
11/11 20/7

**3**

**30 [5]**   5/25
8/6 11/19
24/10 42/10
**3269 [1]**   1/23
**333 [1]**   1/22
**354-3269 [1]**
1/23
**383-5375 [1]**
2/5

**4**

**40,000 [1]**
27/18
**400 [1]**   2/8
**401 [1]**   36/10
**402 [2]**   35/15
36/10
**403 [2]**   35/15
36/10
**430-6000 [1]**
2/9
**45 [2]**   8/6
8/9

**5**

**50 [1]**   36/1
**5375 [1]**   2/5
**5864 [1]**   2/13

**6**

**60 [5]**   5/25
5/25 10/2
11/16 28/2
**6000 [1]**   2/9
**624-6948 [1]**
2/22
**65 [8]**   16/17
17/16 20/8
25/20 28/1
34/9 37/21
37/23
**6948 [1]**   2/22

**728-5864 [1]**
2/13
**7th [1]**   2/17

**8**

**800 [1]**   2/18
**800-0099 [1]**
2/19
**803 [1]**   36/10

**9**

**9,000 [1]**
27/18
**90071 [1]**   2/9
**910 [1]**   2/17

**A**

**abbreviated
[1]**   28/4
**abide [1]**
30/13
**ability [1]**
14/13
**able [8]**
16/12 29/19
32/2 32/12
35/21 36/11
37/5 38/13
**about [37]**
3/18 5/12
5/20 6/17
6/19 7/8 7/13
7/14 8/11
8/15 11/19
12/9 13/14
14/8 14/24
15/9 15/11
15/22 18/2
18/3 19/2
19/17 23/24
29/8 29/11
29/14 30/3
31/8 33/13
33/14 33/22
34/22 35/7
35/12 36/4
37/15 41/5
**above [1]**
42/6
**above-entitled
[1]**   42/6
**absolute [3]**
13/24 13/25
36/16

8/25 24/15
36/18
**accurate [1]**
42/5
**ACKERMAN [2]**
2/11 3/12
**acronyms [2]**
41/4 41/7
**Act [6]**   13/7
14/12 21/23
23/23 37/23
38/15
**Action [1]**
3/1
**actual [1]**
34/23
**actually [12]**
8/2 14/21
18/4 19/18
21/5 27/1
29/19 30/11
31/22 35/8
36/7 36/21
**additional [2]**
7/22 21/1
**address [8]**
4/6 10/25
12/23 14/25
16/13 34/13
37/10 38/25
**addressing [1]**
23/5
**adequately [1]**
16/13
**admitted [2]**
16/5 32/16
**advance [3]**
5/7 17/5
17/13
**advised [1]**
27/2
**affected [1]**
30/7
**after [12]**
6/20 7/2 17/3
17/24 17/24
24/10 25/19
26/3 26/5
26/23 27/1
41/5
**again [10]**
10/15 12/5
13/20 14/1
21/20 27/22

37/19 37/19
37/20 39/13
**against [10]**
10/24 21/24
22/5 22/13
24/22 26/4
26/25 26/25
27/6 36/15
**aggregate [3]**
8/5 8/6 8/8
**ago [2]**   5/17
26/2
**agree [1]**
17/12
**agreed [2]**
33/2 33/3
**agreement [10]**
21/17 23/15
26/10 26/13
26/17 26/23
27/9 27/10
27/13 38/20
**agrees [1]**
34/16
**aided [1]**
1/25
**AIR [3]**   1/5
3/1 27/14
**airline [4]**
3/17 22/11
24/1 24/13
**airlines [3]**
24/1 26/7
27/19
**Airways [1]**
26/2
**Akins [2]**   8/1
27/20
**al [4]**   1/5
1/8 3/2 3/3
**all [29]**   3/12
3/13 4/1 4/19
5/7 6/23 6/25
8/7 8/8 13/2
14/8 14/16
14/23 16/11
21/16 22/17
25/9 25/13
26/20 27/7
27/20 30/3
31/3 32/9
34/10 38/16
38/17 40/1
41/10
**allegations
[1]**   13/21

**allocate [1]**
14/7
**allocated [1]**
12/17
**allot [1]**
10/18
**allotted [2]**
10/7 11/16
**almost [2]**
18/18 34/3
**alone [2]**
27/19 27/23
**along [2]**
16/3 21/18
**ALPA [1]**   26/3
**already [4]**
7/12 30/17
33/2 40/2
**also [5]**   3/20
12/8 23/1
27/2 37/22
**although [2]**
4/8 8/2
**always [3]**
15/15 17/20
24/6
**am [1]**   37/8
**ambitiously
[1]**   28/2
**amount [3]**
4/23 10/20
12/5
**AMZT [1]**   41/6
**Angeles [1]**
2/9
**angry [1]**
37/15
**another [4]**
16/7 24/24
31/1 33/13
**answer [2]**
15/5 25/15
**answered [1]**
17/17
**answering [1]**
23/4
**anticipate [2]**
6/22 8/2
**anticipating
[1]**   11/13
**any [8]**   4/13
6/9 16/14
27/4 35/3

41/4
**anyone's [1]**
30/6
**anything [7]**
4/3 24/21
29/13 31/14
36/12 37/2
40/16
**anyway [1]**
11/14
**appeal [4]**
21/6 21/22
22/1 25/25
**Appeals [2]**
19/7 21/7
**appear [1]**
40/11
**apply [5]**
18/8 19/8
19/19 34/17
36/5
**appreciate [4]**
14/10 33/21
35/19 41/3
**approach [3]**
3/4 19/23
28/22
**appropriately
[1]**   14/7
**approximately
[2]**   7/13
7/18
**arbitration
[1]**   26/25
**are [21]**   5/2
6/2 7/24 8/18
8/19 11/22
15/18 15/24
18/3 18/21
23/14 25/18
28/24 32/8
32/9 34/4
35/25 36/3
36/9 37/21
40/7
**argue [1]**
38/14
**argument [1]**
38/19
**arguments [1]**
4/23
**arranged [1]**
8/20
**as [41]**   3/17

3/25 4/20 6/3
6/11 6/11
6/13 6/13
7/11 7/16
8/13 9/22
11/9 12/19
12/25 14/11
15/5 15/5
19/9 19/20
20/9 21/14
21/23 22/13
23/6 24/12
28/16 32/23
33/4 34/3
34/14 34/14
34/19 35/21
35/21 36/23
39/9
**as I [1]**   15/5
**aside [2]**
11/4 13/13
**ask [12]**   6/9
16/8 19/3
19/24 22/6
27/15 28/23
29/13 29/22
31/3 31/7
34/15
**asking [4]**
15/15 15/18
15/19 23/9
**assume [2]**
11/8 21/10
**assumption [1]**
20/6
**ATLAS [3]**   1/5
3/1 23/14
**attention [5]**
19/18 19/19
34/24 37/3
38/9
**audio [2]**
29/20 32/4
**audio/visual
[2]**   29/20
32/4
**authority [1]**
19/18
**Avenue [2]**
1/22 2/21
**avoid [3]**
5/18 8/25
24/25

**back [5]**
13/15 20/20
20/21 22/10
22/12
**bad [1]**   25/17
**ball [1]**
26/20
**bargaining
[10]**   20/16
21/17 22/19
23/11 23/15
24/5 24/25
26/10 26/14
27/13
**based [3]**
10/10 22/10
25/22
**basing [1]**
40/9
**basis [3]**
17/21 18/11
27/12
**battles [2]**
23/2 27/22
**be [84]**
**bear [1]**   13/8
**because [27]**
4/16 6/21
6/24 8/4
11/13 11/19
12/11 12/17
12/22 12/25
13/22 15/11
16/19 17/10
20/5 28/13
31/11 32/4
35/14 35/17
35/22 36/7
37/4 37/16
37/20 39/23
41/4
**because I'm
[1]**   12/25
**becomes [1]**
25/24
**been [11]**
9/24 10/23
13/9 17/12
18/2 20/6
25/20 25/23
25/23 31/10
33/3
**before [10]**

17/3 17/13
23/19 27/13
28/17 41/5
42/7
**beforehand [1]**
15/11
**beginning [2]**
7/5 17/3
**behalf [1]**
22/4
**behind [1]**
39/24
**being [2]**
37/1 39/9
**believe [5]**
7/17 33/2
33/11 33/15
40/3
**bench [4]**
18/24 19/2
19/11 40/7
**best [8]**
13/24 14/1
14/13 25/11
30/8 32/25
33/19 39/20
**betting [1]**
24/10
**between [5]**
17/16 20/18
20/18 21/12
39/7
**big [2]**   15/6
20/11
**biggest [1]**
12/2
**bit [3]**   10/21
18/2 32/5
**blank [3]**
37/14 37/14
37/14
**Board [1]**
27/3
**book [2]**
32/10 32/10
**books [4]**
31/17 31/18
32/3 32/14
**both [6]**   5/7
6/10 10/17
14/21 19/3
31/18
**bottom [1]**
24/8

**B**

bounds [1]
 10/7
Boy [1]   35/4
brief [8]   7/3
 15/15 16/7
 16/10 16/12
 16/13 35/22
 35/25
briefly [3]
 5/12 5/15 6/4
briefs [6]
 11/21 14/20
 14/22 15/10
 15/19 37/5
bring [8]
 19/18 19/18
 22/8 33/23
 34/23 37/3
 38/8 40/5
BROTHERHOOD
 [5]   1/8 2/21
 3/2 3/16 3/23
brought [2]
 10/24 27/6
build [1]
 37/3
burden [2]
 13/6 13/7
but it [1]
 13/18

**C**

CA [1]   2/9
call [4]   4/8
 7/20 7/20
 27/12
calling [1]
 4/9
calls [1]
 24/17
can [36]   4/22
 6/13 10/25
 11/6 12/13
 13/18 15/4
 15/9 16/11
 16/13 17/14
 17/19 18/12
 19/5 19/11
 20/14 21/5
 21/21 22/24
 29/17 29/18
 32/25 33/18
 34/13 34/24

37/4 37/5
 37/25 38/25
 39/10 39/10
 40/3 41/1
 41/7
can't [7]   7/1
 8/22 23/3
 28/10 30/8
 38/3 40/12
cannot [2]
 12/6 39/6
Captain [1]
 12/7
care [1]   30/3
careful [1]
 8/9
Carlson [2]
 5/9 12/8
carrier [2]
 24/16 27/13
case [21]
 3/11 4/10
 4/18 5/20
 7/16 9/7 11/7
 11/10 11/21
 12/11 12/14
 15/16 18/6
 18/13 21/13
 23/19 26/1
 32/16 36/3
 39/16 42/7
cases [8]
 15/23 17/11
 19/6 19/7
 22/11 25/15
 25/18 25/18
category [1]
 39/9
central [1]
 37/2
CEO [1]   5/11
certain [1]
 10/25
certainly [3]
 8/18 10/21
 15/16
CERTIFICATE
 [1]   42/1
Certified [1]
 42/4
certify [1]
 42/4
chambers [1]
 31/1

33/3
Charlotte [1]
 26/2
chase [1]
 13/21
check [1]
 8/21
choices [1]
 14/8
choose [2]
 23/1 27/22
cited [1]
 38/12
Civil [1]   3/1
claims [1]
 10/23
clarify [2]
 16/25 31/22
clerk [3]
 31/21 31/25
 32/17
client [2]
 14/13 24/2
clients [2]
 23/22 29/1
clock [4]
 4/21 4/21
 13/1 39/17
close [2]
 15/6 24/13
co [1]   3/23
co-counsel [1]
 3/23
cobble [1]
 16/12
colleague [1]
 3/24
colleagues [3]
 3/8 3/11
 3/20
collective [9]
 20/16 21/17
 22/19 23/11
 23/15 24/25
 26/9 26/14
 27/12
COLUMBIA [1]
 1/1
come [4]   6/25
 10/13 28/17
 28/20
coming [2]
 13/10 33/25
comment [1]

company [6]
 5/12 10/16
 24/12 26/13
 26/23 27/6
compel [1]
 27/7
compelled [1]
 26/22
compiled [1]
 28/6
complaint [3]
 36/15 36/22
 37/8
complaints [1]
 36/14
complete [2]
 29/9 42/5
compliance [3]
 38/1 38/5
 38/15
comply [1]
 38/17
complying [1]
 38/8
computer [3]
 1/25 29/20
 29/23
computer-aided
 [1]   1/25
conceivably
 [1]   21/11
concern [2]
 12/2 35/7
concluded [1]
 41/14
condense [1]
 10/22
conduct [2]
 27/3 29/12
confer [3]
 14/24 29/7
 33/22
conference [2]
 1/12 16/18
confident [2]
 28/8 41/3
confines [1]
 14/14
conformity [1]
 37/25
confronted [1]
 40/2
connected [1]
 39/5

consider [2]
 16/23 19/12
considered [1]
 38/3
consolidate
 [3]   17/5
 27/16 28/15
consolidated
 [2]   17/8
 25/20
consolidation
 [5]   16/17
 20/8 23/7
 28/1 34/9
Constitution
 [1]   1/22
contemplating
 [1]   20/7
contempt [1]
 22/14
context [1]
 19/16
contexts [1]
 34/2
continue [1]
 24/7
contract [5]
 23/23 23/24
 24/11 24/19
 25/10
control [1]
 31/8
correct [4]
 9/19 10/10
 10/14 21/7
correctly [1]
 28/6
could [6]
 3/20 10/1
 15/2 15/4
 28/7 34/6
couldn't [1]
 23/3
counsel [4]
 3/4 3/23 3/25
 29/7
counted [1]
 18/4
couple [2]
 4/6 40/22
course [4]
 3/9 15/9 35/1
 38/24
court [36]
 1/1 1/20 1/21

**C**

court... [33]
 1/21 6/4 7/18
 8/19 9/25
 10/1 12/25
 15/19 16/21
 16/22 17/5
 17/12 18/11
 19/6 19/6
 19/22 20/9
 21/7 21/24
 22/5 24/23
 25/21 26/2
 28/14 31/17
 32/6 32/11
 32/15 32/22
 34/6 34/14
 41/2 42/11
Court's [5]
 13/24 15/18
 26/6 30/13
 39/22
courthouse [1]
 31/4
courtroom [5]
 28/25 29/3
 29/12 30/7
 31/5
cover [2]
 10/18 11/2
covered [3]
 12/5 13/19
 13/20
create [1]
 24/22
cross [27]
 4/14 4/24 5/2
 5/5 6/19 6/20
 6/21 7/9 7/11
 7/15 8/2 8/2
 8/6 8/14 8/18
 8/25 9/8 9/11
 11/7 12/3
 12/7 12/20
 12/24 30/6
 40/6
cross-exam [6]
 5/5 8/14
 8/18 12/3
 12/24 40/3
cross-examinat
ion [6]   4/14
 7/11 11/7

40/6
cross-examinat
ions [1]   4/24
cross-examine
 [2]   12/7
 30/14
CRR [1]   1/20
crystal [1]
 26/20
currently [3]
 16/5 33/4
 33/11
customer [4]
 5/13 36/13
 36/15 36/21
cv [1]   1/7

**D**

D.C [1]   42/8
Dan [1]   7/25
dance [1]
 24/15
data [1]   28/5
date [2]   21/8
 21/10
day [1]   40/9
days [3]   5/17
 22/12 28/2
DC [4]   1/22
 2/5 2/18 2/22
deadly [1]
 20/11
deal [11]
 10/19 11/14
 11/20 11/21
 13/19 13/20
 13/23 30/20
 32/24 39/11
 39/25
dealing [3]
 25/3 37/22
 39/19
deals [1]
 6/16
dealt [1]
 24/12
decide [1]
 19/12
decision [8]
 18/10 18/14
 20/20 20/22
 20/23 25/21
 26/6 40/10
declaration
 [7]   4/13 5/6

30/5 30/12
30/17
declarations
 [5]   5/15 6/3
 7/5 7/14 7/19
defend [3]
 13/8 14/12
 36/15
defendant [5]
 3/16 5/21 6/6
 10/8 14/11
defendant's
 [1]   7/9
defendants [9]
 1/9 2/15
 5/18 7/2
 17/16 17/18
 21/24 22/4
 32/14
defendants'
 [1]   16/15
DEIDRE [1]
 2/20
Deirdre [1]
 3/22
delay [2]
 17/14 39/6
delayed [1]
 15/23
denied [1]
 15/24
depends [1]
 13/19
described [1]
 17/25
desire [1]
 11/15
details [1]
 13/22
dhamilton [1]
 2/23
did [3]   14/19
 17/15 17/16
didn't [2]
 13/22 38/17
difference [6]
 20/11 20/17
 20/18 20/18
 21/12 21/20
difference
 between [1]
 21/12
different [3]
 23/4 23/9

direct [9]
 4/23 5/14 6/3
 6/10 9/14
 10/12 10/17
 26/18 33/9
directing [1]
 32/11
directly [1]
 25/15
discovery [11]
 16/20 16/24
 17/15 17/19
 17/24 21/1
 21/2 21/3
 22/23 23/2
 28/3
discuss [1]
 37/2
discussed [3]
 14/22 14/23
 16/8
dispute [1]
 14/12
disputes [1]
 23/13
disrespectful
 [1]   25/2
disrespectfull
y [1]   24/23
distracts [1]
 22/19
district [5]
 1/1 1/1 1/14
 1/21 19/6
divide [1]
 4/22
division [1]
 3/17
do [68]
document [3]
 17/16 35/9
 36/7
documents [4]
 17/18 36/3
 36/4 39/8
does [5]   30/2
 34/10 38/4
 38/5 40/21
doesn't [2]
 37/12 40/11
doing [3]
 4/15 9/4
 12/19
doing so [1]

don't [44]
done [8]   4/19
 14/6 14/6
 14/6 17/20
 17/20 19/4
 23/24
double [3]
 35/7 36/19
 36/20
down [4]
 13/21 21/8
 28/3 41/7
dozens [2]
 36/9 36/10
Dr. [2]   5/9
 12/8
Dr. Lee [2]
 5/9 12/8
driven [1]
 10/15
due [3]   13/9
 13/11 13/17
dumped [1]
 28/5
during [3]
 21/4 29/3
 29/5

**E**

each [2]   4/22
 29/1
earlier [1]
 35/10
ears [1]
 13/10
earth [1]
 28/7
easier [3]
 30/15 32/5
 41/8
economy [1]
 17/23
Ed [1]   3/15
EDWARD [3]
 2/16 2/17
 3/15
effect [2]
 17/10 21/4
effectively
 [2]   11/23
 11/24
efficient [2]
 12/18 35/17
egleason [1]

**E**

egleason...
 **[1]**   2/19
Ehrlich **[4]**
 1/20 42/3
 42/10 42/11
either **[10]**
 19/9 19/16
 20/2 21/5
 21/16 22/2
 22/24 25/20
 32/16 40/16
electronics
 **[1]**   34/4
Elmo **[1]**
 29/18
else **[3]**
 21/18 29/13
 40/22
email **[2]**
 36/21 37/10
encourage **[2]**
 15/11 39/12
end **[9]**   4/17
 12/19 15/8
 16/23 17/2
 37/1 39/18
 40/8 40/9
ending **[1]**
 18/20
ends **[1]**   24/5
enhances **[1]**
 26/16
enough **[3]**
 10/18 14/18
 37/3
enter **[1]**
 15/12
entire **[1]**
 29/3
entitled **[2]**
 29/2 42/6
envelope **[1]**
 13/15
envision **[4]**
 5/4 5/8 7/10
 31/16
envisioned **[1]**
 11/10
envisioning
 **[1]**   36/17
equal **[2]**
 4/22 11/9
equivalent **[1]**
 10/17

25/13
26/13
estimate **[2]**
 8/3 10/20
estimates **[1]**
 5/22
et **[4]**   1/5
 1/8 3/2 3/3
even **[11]**
 7/18 13/22
 24/13 24/14
 27/3 27/13
 28/6 30/5
 33/19 36/4
 37/16
ever **[1]**
 21/13
every **[4]**
 18/18 18/18
 18/19 24/12
everyone **[1]**
 34/16
everything **[3]**
 36/14 36/25
 40/22
evidence **[19]**
 5/17 5/20
 11/14 18/8
 19/8 19/12
 19/19 25/22
 34/17 34/23
 35/13 36/5
 37/12 37/16
 37/22 38/3
 39/16 40/5
 40/10
evidentiary
 **[10]**   13/23
 18/5 18/12
 19/15 20/13
 34/9 36/1
 38/21 39/20
 40/1
exam **[8]**   5/5
 5/14 8/14
 8/18 10/15
 12/3 12/24
 40/3
examination
 **[7]**   4/14
 7/11 10/5
 11/7 12/20
 30/6 40/6
examinations
 **[3]**   4/23

examine **[2]**
 12/7 30/14
examining **[1]**
 28/21
example **[1]**
 38/12
except **[1]**
 28/25
excluded **[2]**
 28/25 29/5
excluding **[1]**
 7/23
exhibit **[11]**
 18/18 31/17
 31/18 32/3
 32/10 32/12
 32/14 32/17
 35/2 35/3
 37/7
exhibits **[6]**
 31/24 32/8
 32/9 32/15
 32/15 36/10
expedite **[1]**
 4/4
expedited **[6]**
 15/18 15/20
 15/24 16/10
 17/20 17/24
experience **[7]**
 7/14 21/19
 22/8 22/11
 24/16 25/3
 25/15
experiences
 **[2]**   7/16
 7/19
expert **[4]**
 5/9 7/25 9/1
 27/23
experts **[1]**
 27/19
explain **[3]**
 36/8 38/23
 38/24
expressly **[1]**
 35/13
extended **[2]**
 6/23 8/2
extending **[1]**
 16/14
extension **[1]**
 16/8
extensive **[2]**

extent **[1]**
 15/23
extraordinary
 **[1]**   31/4
extremely **[1]**
 31/7
Eye **[1]**   2/4
eyeballing **[1]**
 10/11

**F**

facile **[5]**
 29/21 30/9
 30/20 32/23
 34/4
facilitate **[2]**
 34/11 35/20
fact **[7]**   17/9
 21/20 27/9
 33/24 34/16
 34/20 39/15
facts **[1]**
 10/2
Fair **[1]**
 14/18
fall **[1]**   39/8
fashion **[1]**
 36/5
fast **[1]**
 18/14
fatigue **[2]**
 7/14 7/20
favor **[1]**
 39/15
Federal **[1]**
 26/2
feel **[2]**
 10/13 26/22
few **[3]**   11/22
 12/4 22/12
fights **[1]**
 13/4
figure **[1]**
 4/15
file **[3]**
 14/22 16/15
 20/8
filed **[4]**
 7/13 7/19
 26/24 26/25
filibuster **[1]**
 14/2
filing **[1]**
 16/6

fird **[3]**
 12/16 12/20
 39/18
finds **[1]**
 24/6
fine **[5]**   12/1
 20/22 25/6
 35/24 40/4
first **[4]**   7/1
 10/16 14/25
 33/25
five **[5]**   9/21
 10/4 10/12
 11/8 24/4
five-and-a-hal
f **[1]**   24/4
fixed **[1]**
 30/17
flies **[1]**
 34/3
flight **[2]**
 5/10 37/14
Flynn **[1]**
 5/11
follow **[2]**
 29/16 31/6
follow-up **[1]**
 29/16
following **[1]**
 33/6
foregoing **[1]**
 42/4
forgot **[1]**
 3/18
form **[1]**
 33/25
forth **[1]**   5/3
fortune **[1]**
 5/6
forward **[1]**
 28/15
foundational
 **[1]**   20/4
frame **[2]**   6/6
 6/7
frankly **[6]**
 11/19 18/23
 20/5 22/19
 24/24 39/23
free **[1]**
 10/13
frequently **[1]**
 25/21
front **[3]**
 4/17 22/12

**F**

front... [1]
34/20
full [1]   27/4
further [2]
31/14 40/16

**G**

gentleman [1]
33/7
get [15]   8/21
13/23 15/1
16/10 18/13
18/25 18/25
20/20 21/6
23/16 23/18
23/24 35/24
36/9 41/6
give [3]   15/4
39/1 41/7
given [8]   4/7
4/11 11/15
15/20 33/24
34/16 34/20
39/15
giving [2]
13/12 33/17
glad [1]
15/22
GLEASON [19]
2/16 2/17
3/15 3/15 6/9
6/18 7/12
7/17 8/20
10/11 15/22
16/18 17/19
18/15 19/24
25/16 29/15
39/7 39/14
gleasonlawdc.c
om [1]   2/19
go [11]   10/16
10/21 12/19
15/3 18/11
20/20 20/21
20/25 21/13
28/15 28/18
God's [1]
28/6
goes [4]
24/21 25/24
27/8 35/13
going [81]
going to [1]

gone [1]   18/4
good [12]   3/6
3/14 5/6
10/20 12/3
15/5 23/12
25/17 28/2
31/7 32/20
40/5
goodness [1]
27/17
got [14]   4/19
10/12 12/4
18/16 20/3
20/22 21/6
26/8 27/17
27/18 27/19
28/5 34/20
35/7
gotten [1]
23/2
great [4]
10/19 13/19
13/20 41/9
greatly [1]
26/16
green [7]
28/7 30/9
33/2 33/7
33/13 33/15
33/16
grievance [1]
26/25
ground [6]
10/19 11/2
12/5 13/20
13/20 23/24
grow [1]   15/7
Guardia [5]
13/7 14/12
21/23 37/23
38/15
guess [2]
21/14 25/11
guidance [1]
35/20
guy [1]   33/13
guys [1]
29/19

**H**

had [13]
11/10 13/21
16/23 20/3
22/23 23/1

27/22 30/12
30/22 36/21
40/2
half [8]   4/18
9/9 9/12 9/15
12/15 21/10
23/25 24/4
hallway [1]
6/19
HAMILTON [2]
2/20 3/22
hand [1]
37/13
handle [4]
22/24 29/17
29/18 40/3
handled [1]
25/17
happen [1]
5/1
happened [2]
26/3 26/6
happening [1]
24/14
happens [2]
23/11 28/18
happy [1]   4/3
hard [2]   6/7
8/3
harsh [1]
14/4
has [8]   16/18
25/23 25/23
27/6 30/4
33/3 37/24
39/9
have [115]
have a [1]
22/5
haven't [3]
12/17 16/8
18/4
having [3]
5/6 16/9
22/17
he [10]   6/19
12/13 12/13
12/14 28/10
30/9 30/10
33/4 33/14
41/3
he's [10]
3/24 28/9
30/10 30/16

33/7 33/13
41/4 41/6
head [2]   4/20
21/9
Heads [1]
28/3
hear [6]   7/2
7/4 8/4 11/17
23/7 37/6
heard [2]
15/14 20/6
hearing [38]
4/4 4/17 7/11
8/3 11/5
11/21 11/25
12/1 13/12
15/6 15/9
15/10 16/2
16/23 17/2
17/4 17/6
17/14 17/24
18/25 19/9
19/20 20/2
25/19 27/4
30/7 34/11
35/1 35/22
35/25 37/4
37/21 38/24
38/24 39/6
39/21 41/2
41/14
hearings [1]
11/5
hearsay [14]
18/23 18/24
19/2 20/4
35/8 35/8
35/15 36/16
36/18 36/19
36/20 36/22
38/3 38/11
heavy [2]
13/7 40/11
help [9]   3/11
4/4 16/4
24/21 29/23
32/7 34/11
35/20 36/1
helpful [4]
10/1 31/14
40/19 41/1
here [19]
8/21 10/9
12/6 13/9

17/7 20/17
25/9 27/25
29/21 31/4
31/4 31/5
35/6 35/11
35/25 36/9
37/7
here's [3]
12/9 36/3
36/21
him [2]   30/14
41/7
his [5]   18/16
30/12 30/17
33/9 41/8
hold [1]
22/13
Honor [24]
3/6 3/14 5/4
6/24 12/2
15/17 16/4
16/16 16/22
20/1 23/21
25/14 26/22
28/11 29/17
30/21 31/16
32/24 35/7
38/12 39/9
40/15 40/23
41/11
HONORABLE [2]
1/13 42/7
hope [4]   2/8
18/19 34/5
37/3
hopeful [1]
34/3
hoping [1]
7/6
hour [5]   9/9
9/12 10/5
11/9 12/20
hour-and-a-hal
f [2]   9/9
9/12
hours [10]
9/15 9/21
10/4 10/6
10/12 11/8
11/8 12/14
13/15 39/19
how [19]   4/10
4/15 5/2 6/19
9/7 11/4 12/6

**how... [12]**
13/13 14/8
15/6 15/7
17/10 18/3
18/16 27/24
28/16 28/17
29/14 36/14
**hundred [4]**
18/5 18/12
19/15 35/16
**hundreds [1]**
34/20
**hurt [1]**
12/12

**I**

**I'll [10]**
8/21 11/21
15/6 15/22
22/5 22/12
30/8 30/20
32/6 38/14
**I'm [77]**
**I've [9]**
11/16 17/12
18/2 19/4
20/22 24/12
27/17 34/20
40/2
**idea [3]**
20/23 28/17
41/9
**identify [2]**
3/5 39/8
**impact [1]**
5/12
**imposition [1]**
15/17
**improbable [1]**
40/8
**INC [1]**   1/5
**inclination
[1]**   19/14
**inclined [1]**
16/20
**including [2]**
5/20 27/8
**inconsistent
[1]**   35/17
**Incorporated
[1]**   3/2
**incredible [1]**
12/5

26/17
**indicated [2]**
6/7 16/22
**individual [2]**
7/15 7/19
**indulge [3]**
31/1 32/25
34/6
**industry [2]**
24/2 24/13
**information
[1]**   37/11
**informed [3]**
7/12 7/17
16/19
**injunction
[29]**   13/16
15/21 16/2
16/11 17/4
17/14 17/15
17/21 18/7
18/25 19/9
19/20 20/12
20/19 20/19
20/22 21/4
21/14 21/21
23/19 25/18
25/19 26/3
28/10 28/16
34/18 35/18
36/6 37/25
**injury [1]**
5/13
**instance [2]**
33/25 36/13
**Instead [1]**
24/6
**instruction
[1]**   13/25
**instructions
[2]**   29/17
31/6
**intend [4]**
4/8 7/15 9/7
20/7
**intent [1]**
5/23
**interlocutory
[2]**   21/5
21/22
**INTERNATIONAL
[5]**   1/8 2/21
3/2 3/16 3/23
**interrogatorie
s [1]**   17/17

**[1]**   37/23
**introduce [2]**
3/8 3/20
**invaluable [1]**
31/10
**involve [1]**
8/5
**involving [1]**
7/20
**irreparable
[1]**   5/13
**is [105]**
**isn't [2]**
35/4 37/16
**issue [15]**
4/2 13/9
13/12 14/12
16/21 17/7
18/1 30/18
32/21 33/20
33/23 33/24
34/1 37/19
37/24
**issued [2]**
26/4 37/25
**issues [10]**
13/3 13/23
16/13 21/6
24/19 25/21
26/4 38/21
40/1 40/23
**it [85]**
**it's [34]**   8/3
8/25 10/15
12/12 12/16
12/24 13/6
13/6 15/7
16/10 19/12
20/10 20/11
24/6 24/24
25/11 27/7
27/11 30/1
30/4 30/17
33/4 34/1
35/2 35/17
36/1 37/7
37/8 38/11
38/11 38/13
38/14 38/25
40/12
**its [2]**   3/17
24/17
**itself [1]**
38/6

**James [1]**
33/16
**jammed [1]**
13/10
**JANGER [2]**
2/3 3/12
**Jeff [1]**   41/3
**joint [2]**
5/23 27/12
**JR [1]**   2/16
**JUDGE [4]**
1/14 35/11
36/6 37/7
**judges [1]**
22/8
**judgment [4]**
11/3 19/9
19/21 34/19
**judicial [1]**
17/23
**June [2]**
26/12 26/19
**jurisdiction
[1]**   19/6
**jurisdictions
[1]**   19/7
**jury [2]**
29/10 35/6
**just [70]**
**justice [2]**
15/23 15/24

**K**

**Kalitta [1]**
24/3
**key [1]**   36/3
**kind [2]**   6/21
14/7
**Kirchner [2]**
7/25 11/1
**know [65]**
**Kristen [1]**
13/13

**L**

**La [5]**   13/7
14/12 21/23
37/23 38/15
**labor [2]**
23/12 23/22
**laps [1]**
27/21
**largest [1]**

**last [5]**
16/24 18/16
24/3 26/1
27/21
**last three [1]**
16/24
**later [1]**
22/25
**law [13]**   2/17
3/15 11/20
11/24 13/6
18/6 19/4
19/17 21/7
31/24 32/17
34/17 38/20
**lawsuit [2]**
15/21 26/24
**leaders [1]**
7/25
**learner [2]**
30/25 31/11
**least [8]**   4/7
7/24 11/23
18/21 19/5
20/7 27/18
36/19
**leave [2]**
6/25 28/22
**Lee [2]**   5/9
12/8
**legal [4]**
10/2 21/6
22/18 24/23
**length [1]**
27/1
**less [2]**
12/14 34/1
**let [10]**   6/8
8/21 9/3 10/8
12/23 19/3
19/24 27/15
33/22 34/15
**let's [4]**
4/19 20/20
20/25 37/2
**letting [2]**
4/25 6/10
**level [1]**
18/21
**leverage [2]**
22/13 27/7
**life [3]**   24/7
30/15 41/8
**like [15]**

**like... [15]**
7/21 7/24 9/2
9/9 9/23
10/11 11/1
18/5 18/18
19/2 22/22
28/14 36/24
37/5 38/12
**likelihood [1]**
26/16
**likely [9]**
6/16 11/15
11/20 22/1
22/7 22/10
24/22 25/22
34/13
**limited [2]**
5/5 39/19
**line [3]**    7/13
21/18 24/9
**lines [1]**    7/6
**list [7]**    4/7
8/21 10/8
36/9 39/1
41/4 41/7
**litigation [1]**
27/5
**little [2]**
10/21 18/2
**live [2]**    7/2
20/14
**LLP [3]**    2/4
2/8 2/11
**Local [2]**
3/18 3/25
**locals [1]**
24/1
**logistics [1]**
40/23
**long [7]**    6/13
8/13 11/18
12/7 25/11
28/9 35/21
**longer [3]**
10/21 21/11
39/16
**look [7]**    9/6
13/19 15/3
27/17 32/12
37/7 40/10
**looked [1]**
18/18
**looking [2]**

**looks [4]**
7/21 7/24
10/11 18/4
**Los [1]**    2/9
**lot [14]**    9/24
10/23 11/2
11/20 13/21
13/22 15/3
17/19 19/1
24/18 27/23
29/11 38/11
40/3
**loud [1]**
34/12
**Louisiana [1]**
2/21

**M**

**made [3]**    8/23
18/23 23/1
**maintain [1]**
24/17
**make [12]**
6/15 9/10
11/3 11/6
14/7 30/15
32/25 35/21
38/18 38/19
39/5 41/8
**makes [1]**
19/10
**man [1]**    24/10
**manage [1]**
14/1
**manner [2]**
19/8 34/18
**many [2]**
25/17 28/5
**March [2]**
26/24 27/2
**material [4]**
7/16 9/24
27/21 35/3
**math [1]**    10/9
**matter [4]**
11/5 15/20
21/15 29/9
**may [28]**    3/8
3/21 8/17
10/21 12/20
13/3 14/5
15/14 16/4
16/8 17/5
17/10 18/11

24/2 30/1
30/2 30/9
30/10 32/3
32/4 32/21
37/1 37/1
39/14 41/1
41/3
**maybe [3]**    8/9
9/20 23/25
**McGUINNESS [2]**
2/7 3/10
**me [48]**
**mean [14]**    6/1
8/9 9/3 15/4
21/9 21/13
24/14 24/23
25/2 30/8
36/16 38/19
39/12 40/22
**meaningful [1]**
20/17
**means [2]**
16/2 24/18
28/13
**meantime [1]**
22/10
**mechanicals
[1]**    27/19
**mediation [2]**
27/2 27/3
**meeting [1]**
31/1
**member [1]**
22/25
**mentioned [1]**
39/9
**mere [1]**
35/25
**Merit [1]**
42/3
**merits [5]**
17/5 17/10
20/10 22/22
25/22
**MICHAEL [1]**
2/7
**might [11]**
3/8 6/19 6/20
9/2 16/22
21/2 25/14
32/5 34/1
36/20 41/6
**Mike [1]**    3/10
**military [1]**

**Miller [1]**
19/5
**minds [1]**
33/3
**minimal [1]**
6/22
**minutes [6]**
8/6 8/10 8/12
10/3 11/19
11/19
**mislead [1]**
32/22
**mistaken [1]**
33/12
**mmcguinness
[1]**    2/10
**moment [2]**
8/17 33/17
**Monday [1]**
31/2
**monitor [1]**
12/19
**months [1]**
21/3
**mooted [1]**
23/19
**more [15]**    8/1
8/5 15/7
16/20 17/19
20/13 24/22
25/20 26/6
27/15 27/23
28/13 29/11
34/14 39/16
**morning [3]**
3/6 3/14
30/20
**MOSS [2]**    1/13
42/7
**most [7]**
12/17 29/18
29/21 30/9
30/20 32/23
34/4
**mostly [1]**
20/4
**motion [2]**
17/4 19/10
**mountain [2]**
23/2 39/25
**mouth [1]**
21/25
**move [2]**    6/8
16/3

6/9 6/18 7/12
7/17 8/20
10/11 11/15
12/13 15/22
16/9 16/18
18/15 19/24
25/16 27/9
29/15 30/11
33/12 39/4
39/7 39/14
**Mr. [14]**    5/9
5/11 7/25
7/25 11/1
11/1 17/19
27/20 28/9
30/9 33/2
33/7 33/13
33/15
**Mr. Akins [1]**
27/20
**Mr. Carlson
[1]**    5/9
**Mr. Gleason
[1]**    17/19
**Mr. Green [5]**
30/9 33/2
33/7 33/13
33/15
**Mr. Kirchner
[2]**    7/25
11/1
**Mr. Siegel [1]**
28/9
**Mr. Wells [2]**
7/25 11/1
**Mr. William
[1]**    5/11
**much [17]**
4/10 5/2 6/19
11/4 11/13
11/14 13/13
15/5 15/7
27/8 27/24
32/4 37/6
37/16 39/24
40/18 41/8
**my [48]**
**MYERS [5]**    2/4
2/8 2/11 3/7
3/12
**myself [2]**
11/16 36/15

**name [1]**    3/14

**names [1]**
41/8

**Nation [1]**
23/22

**National [1]**
27/2

**necessary [3]**
4/11 8/25
17/23

**need [22]**
4/10 4/15
4/21 5/2 6/20
7/8 14/6 16/2
16/11 17/9
17/23 27/16
28/2 29/19
29/23 31/8
31/22 31/23
31/24 36/2
36/8 41/4

**needed [1]**
4/14

**needs [1]**
12/14

**negotiate [1]**
27/12

**negotiating
[1]**    23/14

**negotiation
[2]**    25/10
26/15

**negotiations
[5]**    24/7
24/11 26/18
26/24 27/10

**never [2]**
24/5 25/18

**new [3]**    2/12
26/15 27/5

**news [1]**    12/3

**next [4]**    3/11
4/5 17/14
41/12

**night [2]**
5/18 18/16

**nine [1]**    7/22

**no [13]**    6/13
8/1 14/21
16/16 17/14
20/23 20/24
24/20 28/6
28/17 29/7

**Norris [5]**
13/7 14/12
21/23 37/23
38/15

**Norris-La [5]**
13/7 14/12
21/23 37/23
38/15

**not [66]**

**note [1]**
26/14

**notice [2]**
9/25 17/7

**notion [1]**
35/18

**November [2]**
16/5 20/21

**November the
[1]**    16/5

**now [15]**    4/20
5/21 15/1
15/1 16/4
20/23 21/11
22/24 23/15
26/16 30/11
33/15 33/19
37/19 39/7

**now I [1]**
30/11

**number [7]**
4/16 10/24
20/4 32/12
32/18 34/12
35/23

**numbered [1]**
32/9

**numbers [1]**
32/10

**NW [3]**    1/22
2/17 2/21

**NY [1]**    2/12

**O**

**O'MELVENY [5]**
2/4 2/8 2/11
3/7 3/12

**objected [1]**
18/18

**objection [3]**
6/9 16/14
34/25

**objections
[22]**    16/6
18/6 18/12

18/23 18/24
19/16 20/3
20/5 20/11
22/24 23/1
34/10 34/13
34/16 34/20
35/16 35/21
36/1 39/1
39/20

**obviously [12]**
12/25 13/6
13/9 15/17
17/13 20/9
21/21 22/6
24/18 30/2
34/9 34/13

**OCTOBER [3]**
1/15 42/8
42/10

**off [5]**    4/20
4/25 6/8 21/9
32/3

**offer [3]**
5/16 6/10
39/17

**offered [1]**
38/14

**OFFICE [2]**
2/17 3/15

**officer [1]**
12/25

**official [5]**
1/21 31/23
31/24 32/15
42/11

**often [1]**
40/4

**Oh [1]**    27/17

**Okay [25]**
3/22 6/16 7/7
8/15 14/15
15/8 20/25
25/1 25/7
25/13 28/8
30/22 31/3
31/13 32/1
32/13 32/20
38/18 39/2
39/3 40/4
40/14 40/16
40/20 41/10

**omm.com [4]**
2/6 2/6 2/10
2/13

25/21 27/16
29/6

**one [27]**
11/16 12/10
19/1 21/5
23/5 23/9
23/17 24/2
24/12 24/17
29/8 29/19
29/20 29/25
30/1 30/2
30/9 30/10
31/23 31/24
31/25 32/15
32/17 32/17
36/24 39/5
40/25

**ones [2]**    8/19
39/24

**only [9]**    9/20
10/25 12/4
23/18 29/17
29/22 32/21
37/25 40/22

**opening [8]**
9/24 10/5
11/9 11/9
11/13 11/15
11/18 11/20

**operations [1]**
5/10

**opportunity
[1]**    9/23

**oppose [1]**
16/19

**order [5]**
15/12 16/5
22/7 22/13
24/20

**ordered [1]**
42/6

**orient [1]**
6/4

**other [19]**
4/9 8/15 19/1
19/7 22/8
22/11 23/17
24/6 24/7
24/12 24/21
28/20 29/4
29/8 32/21
34/1 35/2
37/13 40/25

**others [1]**

**otherwise [2]**
15/12 35/14

**ought [3]**
28/21 29/5
36/6

**our [18]**    5/5
5/23 7/10
8/22 8/23
11/12 13/10
16/18 20/5
22/23 23/2
23/24 27/21
27/22 27/23
30/10 34/14
41/2

**ours [1]**
31/20

**ourselves [1]**
13/8

**out [18]**    4/15
12/12 12/16
12/22 13/1
13/10 14/5
23/17 23/20
26/14 27/10
27/11 28/16
28/17 34/12
37/9 39/18
40/23

**outstanding
[1]**    27/5

**over [5]**    7/15
22/23 22/25
23/15 31/8

**overstate [1]**
18/17

**own [1]**    8/23

**P**

**pages [2]**
27/18 27/18

**paper [4]**
13/10 15/3
28/5 40/1

**papers [3]**
22/25 34/14
38/15

**paragraph [1]**
18/19

**part [3]**
14/17 18/20
29/18

**particular [2]**
27/20 39/8

particularly
  [5]   11/1
  12/7 19/11
  22/11 39/10
parties [14]
  4/4 14/19
  17/9 17/16
  18/3 18/5
  19/3 20/25
  21/16 26/10
  29/13 31/3
  39/12 41/1
partner [1]
  3/10
party [3]
  19/16 25/22
  40/17
PAUL [2]   2/16
  3/24
people [2]
  4/17 31/5
percipient [1]
  5/10
perhaps [1]
  9/8
period [2]
  21/4 27/22
permanent [2]
  20/19 25/24
permission [1]
  28/23
person's [1]
  37/10
personal [1]
  37/11
personally [2]
  23/12 26/9
perspective
  [3]   7/11
  22/4 38/10
PI [4]   20/2
  22/7 34/8
  37/21
pick [3]   13/3
  13/3 23/1
piece [1]
  40/10
pieces [1]
  28/5
pilot [5]
  29/19 32/23
  33/8 33/13
  37/14

pilots [3]
  7/13 7/18
  26/19 34/4
pilots' [2]
  26/4 26/7
place [1]
  26/16
placed [1]
  27/21
plaintiff [1]
  11/5
plaintiffs [8]
  1/6 2/2 3/7
  9/9 9/11 20/7
  33/2 38/17
plaintiffs'
  [2]   13/6
  15/16
pleading [2]
  16/6 16/15
please [3]
  3/4 3/20
  12/23
plenty [1]
  15/15
PLLC [1]   2/17
plus [2]
  27/18 29/22
podium [2]
  3/4 28/22
point [5]
  12/22 18/20
  18/20 20/16
  28/12
pointed [1]
  27/9
points [1]
  8/23
police [1]
  12/10
posing [1]
  23/5
position [3]
  23/8 28/15
  40/8
possibilities
  [1]   8/1
possibility
  [2]   9/17
  15/19
possibly [2]
  15/2 23/3
post [5]
  11/21 14/19
  15/10 35/22

post-hearing
  [4]   11/21
  15/10 35/22
  35/25
post-trial [1]
  14/19
potentially
  [1]   24/21
practical [2]
  21/15 24/18
prattle [1]
  11/18
prediction [1]
  26/20
preliminary
  [27]   13/12
  13/16 15/21
  16/2 16/10
  17/4 17/14
  17/15 17/20
  18/7 19/8
  19/20 20/12
  20/19 20/22
  21/3 21/14
  21/21 23/19
  25/19 25/24
  26/3 28/10
  28/16 34/18
  35/18 36/6
prenumbered
  [1]   32/4
prepared [2]
  5/7 28/1
present [3]
  3/11 29/11
  31/5
presentation
  [1]   7/2
presented [2]
  5/17 25/23
presenting [1]
  16/21
president [1]
  5/9
pretrial [1]
  33/5
pretty [2]
  28/8 34/4
prevail [1]
  25/22
principal [3]
  5/10 8/1 10/2
principally
  [2]   5/16 6/4

14/25
privilege [1]
  22/25
probably [10]
  9/6 13/14
  21/10 22/2
  22/12 28/14
  29/18 34/1
  34/10 39/16
problem [7]
  13/5 19/23
  22/15 22/17
  22/21 36/3
  37/2
problems [1]
  30/19
procedural [1]
  22/18
procedure [1]
  22/6
proceed [3]
  8/18 26/10
  29/14
proceeding [2]
  29/4 29/5
proceedings
  [2]   1/24
  42/6
process [8]
  13/9 13/11
  13/17 20/16
  23/11 24/24
  26/16 38/22
produce [1]
  22/23
produced [1]
  1/25
professional
  [1]   31/7
propose [1]
  14/19
proposing [1]
  14/20
protocol [2]
  26/13 26/15
provide [5]
  6/5 13/22
  31/21 32/2
  33/9
provided [2]
  9/25 17/18
provides [1]
  34/17
provisions [2]
  38/1 38/6

president [1]
  9/8
pull [1]   10/1
put [12]   4/18
  9/3 10/2 11/7
  12/21 13/16
  17/10 25/5
  26/14 29/23
  37/5 39/16
putting [2]
  6/9 21/25

**Q**

question [11]
  17/22 17/22
  21/14 22/16
  23/5 23/6
  23/9 25/5
  25/15 26/21
  34/22
quickly [2]
  10/9 39/11
quite [3]
  11/19 18/3
  41/1
quo [1]   24/17

**R**

RACHEL [2]
  2/3 3/12
raise [4]
  28/21 31/15
  35/14 40/17
raised [2]
  16/18 18/5
raises [1]
  18/1
raising [1]
  37/19
RANDOLPH [2]
  1/13 42/7
rather [4]
  6/11 18/25
  19/1 37/6
reach [2]
  4/17 26/10
reached [2]
  26/12 26/23
reaching [1]
  26/17
reaction [1]
  25/16
reading [1]
  26/5
ready [2]   7/5

**R**

**ready... [1]**
39/10
**real [12]**
16/12 17/22
20/18 21/12
21/19 22/21
22/22 23/16
24/25 25/3
34/22 36/3
**real-world [2]**
20/18 25/3
**really [9]**
5/23 6/21
11/12 14/16
21/13 25/5
36/2 37/15
40/12
**Realtime [1]**
42/4
**reason [1]**
37/19
**reasonable [1]**
7/7
**reasonably [1]**
9/5
**rebuttal [10]**
4/9 4/10 5/16
5/19 6/5 6/11
6/25 7/3 8/23
10/17
**recalling [2]**
5/19 6/11
**recently [1]**
26/7
**recognize [1]**
14/22
**recognizes [1]**
20/9
**record [2]**
3/5 15/6
**redacted [5]**
36/14 36/15
36/25 37/8
37/11
**redaction [2]**
37/9 37/13
**redactions [1]**
40/12
**redirect [4]**
6/17 6/20
6/23 9/18
**redirects [1]**
5/3

**reference [1]**
17/25
**reflect [1]**
5/23
**regard [1]**
7/12
**Registered [1]**
42/3
**regular [1]**
37/20
**related [1]**
18/1
**relations [2]**
5/13 23/23
**relaxed [2]**
20/13 37/21
**reliability
[3]** 34/23
35/13 36/4
**reliable [3]**
35/4 36/7
40/11
**rely [5]** 5/24
6/1 6/2 32/6
36/6
**relying [1]**
35/2
**remember [1]**
24/2
**remote [1]**
40/13
**reported [2]**
1/24 26/1
**reporter [7]**
1/20 1/21
41/2 42/1
42/3 42/4
42/11
**represent [1]**
3/16
**representative
[3]** 29/1
29/2 29/22
**request [6]**
19/17 28/21
28/24 29/7
31/6 34/21
**requesting [1]**
38/23
**requests [1]**
17/17
**require [2]**
10/19 38/5
**reserve [2]**
6/22 9/7

**resent [1]**
9/3 9/4
**resolve [4]**
21/15 23/13
33/19 33/20
**resolved [2]**
18/25 21/16
**respect [10]**
4/7 5/1 20/2
24/19 34/15
35/3 35/4
38/20 38/20
38/21
**respond [2]**
26/21 26/23
**response [1]**
16/6
**responsive [2]**
16/6 16/15
**review [1]**
26/5
**Richard [4]**
1/20 42/3
42/10 42/11
**right [17]**
6/1 7/1 9/16
9/22 16/4
19/3 21/22
25/13 30/11
30/19 32/3
33/15 33/19
35/9 36/14
37/18 41/10
**rjanger [1]**
2/6
**RLA [1]** 24/5
**RMR [1]** 1/20
**ROBERT [2]**
2/3 3/6
**rough [1]**
10/11
**roughly [2]**
8/11 11/8
**rsiegel [1]**
2/6
**rule [12]**
16/17 17/3
18/11 20/8
21/24 22/5
25/20 28/1
34/9 35/15
37/21 37/23
**rules [8]**
18/7 19/7
19/19 29/3

**run [2]**
36/5 37/21
**ruling [3]**
15/20 19/15
35/16
**run [5]** 12/11
12/16 13/1
14/5 39/17
**RUTTER [2]**
2/16 3/24

**S**

**s/Richard [1]**
42/10
**sackerman [1]**
2/13
**said [7]** 4/21
9/7 9/22 17/2
28/17 37/14
37/17
**same [10]**
6/13 10/17
18/8 19/8
19/20 26/4
26/6 32/13
34/18 36/5
**saw [2]** 6/5
18/17
**say [25]** 4/18
6/24 7/1 8/4
8/9 8/22 14/5
14/16 16/20
17/19 19/7
20/20 20/21
20/25 24/11
26/11 28/9
28/13 29/11
29/25 35/6
36/2 37/7
37/10 37/15
**saying [6]**
14/9 33/10
35/15 36/9
36/21 38/5
**says [6]** 17/3
25/21 26/15
35/25 37/24
38/3
**schedule [5]**
15/1 15/10
15/18 15/25
28/4
**screen [1]**
29/24
**second [4]**

**Section [3]**
21/22 27/10
37/24
**see [11]** 5/21
7/4 8/13 13/5
24/14 28/16
28/18 28/18
30/1 40/23
41/12
**seeking [2]**
15/22 15/24
**seem [1]**
37/12
**seems [3]** 7/7
10/6 40/8
**seen [1]** 26/9
**senior [1]**
5/9
**sense [4]**
4/13 6/15
19/10 23/12
**sent [1]**
26/19
**separate [1]**
22/16
**separately [1]**
34/24
**September [1]**
11/11
**serious [3]**
18/3 18/16
20/11
**seriously [1]**
20/8
**serve [1]**
17/16
**service [1]**
23/24
**set [6]** 11/4
11/24 13/13
21/8 31/23
33/4
**sets [3]**
31/19 31/20
31/23
**setting [3]**
34/8 34/9
34/19
**several [4]**
18/5 18/12
19/15 35/16
**share [1]**
25/14

**She [1]**   3/23

**short [1]**
9/25

**should [9]**
6/24 8/9 9/6
9/8 23/6
31/18 31/22
35/12 38/8

**shouldn't [1]**
27/3

**show [1]**
24/24

**showing [1]**
19/19

**sick [2]**   7/14
7/20

**side [7]**   4/22
5/5 20/5 21/5
22/4 24/24
35/2

**sides [2]**   5/7
31/18

**SIEGEL [10]**
2/3 3/7 4/25
12/13 16/9
27/9 28/9
30/11 33/12
39/4

**Siegel's [1]**
11/15

**sift [1]**
27/20

**significant
[2]**   20/4
35/3

**since [3]**
10/16 11/21
29/10

**single [1]**
36/22

**situation [2]**
9/10 31/9

**six [5]**   10/6
11/8 12/14
12/20 21/3

**six-hour [1]**
12/20

**SLOANE [2]**
2/11 3/12

**slow [2]**
30/25 31/11

**so [51]**

**solid [1]**

**some [24]**   4/7
5/12 5/16 6/5
6/20 6/22
7/12 9/17
9/17 10/1
10/2 10/15
12/21 15/9
15/23 18/23
18/24 19/4
19/5 24/6
24/7 26/5
31/8 40/5

**somebody [4]**
29/23 30/4
33/1 34/3

**someone [1]**
30/3

**something [12]**
7/3 9/9 9/21
21/17 29/4
34/21 35/12
36/24 38/2
38/7 38/22
39/14

**sometime [1]**
20/21

**sorry [7]**
3/18 3/18
4/18 17/1
28/13 33/6
36/23

**sort [5]**   9/4
12/17 15/10
29/11 35/17

**sounds [2]**
9/2 28/14

**South [1]**   2/8

**Southern [1]**
27/14

**speak [1]**
5/12

**spellings [1]**
41/7

**spend [1]**
14/8

**spending [2]**
39/18 39/19

**Spirit [1]**
26/7

**Square [1]**
2/12

**staff [1]**
31/4

**stage [1]**

**stand [5]**
5/20 12/6
14/11 29/6
30/16

**standard [3]**
10/2 18/8
20/14

**standing [1]**
29/21

**standpoint [1]**
15/16

**start [1]**
4/25

**started [1]**
27/11

**starting [1]**
18/20

**starts [2]**
21/20 29/6

**statement [5]**
5/23 9/23
9/24 10/3
10/5

**statements [1]**
11/6

**STATES [3]**
1/1 1/14 1/21

**status [3]**
1/12 16/18
24/17

**statute [5]**
14/14 38/1
38/2 38/6
38/7

**stay [1]**   22/7

**stenotype [1]**
1/24

**stick [1]**   7/6

**still [5]**
15/3 16/21
23/14 27/5
32/22

**stipulated [1]**
30/12

**stipulation
[2]**   25/23
26/8

**stopped [1]**
26/24

**story [1]**
27/4

**Street [3]**
2/4 2/8 2/17

**stretch [1]**

**strict [7]**
14/14 18/8
34/18 37/25
38/1 38/5
38/14

**strictly [1]**
38/17

**struggle [1]**
26/5

**stuff [3]**
22/18 31/12
34/10

**subject [3]**
15/20 16/17
30/5

**submit [1]**
14/20

**submitted [2]**
30/4 30/17

**subsequent [1]**
35/10

**substance [1]**
29/8

**succeed [1]**
26/17

**suggesting [2]**
13/2 13/3

**suggestion [1]**
39/5

**Suite [1]**
2/18

**summarize [2]**
4/12 5/15

**summary [4]**
4/24 19/9
19/21 34/19

**super [1]**
18/14

**supposed [1]**
33/15

**sure [8]**   7/1
8/22 9/10
15/8 17/18
18/3 30/11
41/1

**surprise [1]**
39/11

**surrebuttal
[1]**   6/14

**suspect [1]**
22/2

**T**

**tab [2]**   32/10

**table [1]**
11/24

**tabs [1]**
32/17

**take [16]**   4/3
4/4 4/11 12/7
12/24 16/7
16/20 19/1
21/5 21/21
22/1 23/13
25/11 27/23
30/16 38/13

**takes [3]**
24/15 24/16
29/6

**talk [4]**   5/20
15/9 15/11
15/22

**talking [5]**
6/18 8/11
13/14 38/16
41/5

**teamster.org
[1]**   2/23

**TEAMSTERS [11]**
1/8 2/21 3/3
3/17 3/17
3/24 3/25
22/4 23/22
24/3 27/6

**technicians
[1]**   32/7

**technology [3]**
30/22 31/5
31/11

**tell [6]**   12/6
18/12 19/5
30/9 35/5
40/12

**telling [6]**
12/13 14/3
14/4 15/12
28/2 38/21

**tend [1]**
29/14

**terms [6]**
22/21 24/19
32/23 35/20
38/16 39/25

**terribly [1]**
40/11

**testify [7]**
29/7 30/2
30/10 30/10

testify... [3]
  33/1 33/4
  33/16
testifying [2]
  28/25 30/4
testimony [10]
  5/6 6/3 6/11
  7/2 8/24
  10/12 29/9
  29/9 30/6
  33/24
than [7]   6/11
  8/5 12/15
  19/1 23/5
  24/21 25/16
thank [12]
  4/1 4/2 30/21
  31/10 31/13
  39/2 39/3
  40/15 40/18
  40/19 41/11
  41/12
Thanks [1]
  25/13
Thanksgiving
  [1]   24/3
that [225]
that's [46]
their [22]
  4/23 5/14
  5/16 5/19 6/2
  6/10 7/14
  7/15 7/19
  7/25 11/6
  11/7 11/7
  12/4 17/10
  18/20 18/21
  29/2 29/8
  29/9 31/6
  33/3
them [10]
  6/10 6/12
  7/15 8/7 8/13
  10/25 13/7
  17/17 18/16
  33/17
then [22]
  4/14 6/5 7/9
  8/15 9/14
  9/20 10/25
  15/19 20/12
  20/21 20/25
  21/8 22/8

26/9 26/14
28/18 30/17
31/24 32/17
41/13
there [25]
  4/20 6/7 7/1
  7/24 9/8
  11/22 11/22
  15/20 16/17
  20/17 20/17
  21/5 21/12
  21/20 23/6
  25/23 26/8
  28/19 34/22
  35/1 35/10
  36/7 36/24
  37/21 38/2
there's [15]
  9/24 17/7
  17/19 21/16
  24/18 27/8
  28/6 29/11
  33/23 34/21
  35/6 35/12
  37/2 38/7
  40/11
therefore [1]
  8/24
these [10]
  6/2 8/24
  15/23 18/24
  23/12 23/16
  25/17 36/2
  36/4 40/1
they [30]
  5/15 5/16
  7/21 8/4 11/6
  11/6 13/22
  16/19 16/20
  17/10 18/8
  18/18 19/9
  19/20 25/20
  26/24 26/25
  27/2 27/3
  27/7 27/12
  29/1 29/2
  31/7 31/8
  31/8 34/19
  36/2 37/11
  38/17
they're [4]
  11/2 30/5
  30/7 31/7
they've [4]

31/10 33/3
thing [6]
  12/9 26/6
  29/17 32/13
  36/16 40/25
things [8]
  4/6 11/22
  16/2 19/2
  21/15 23/16
  28/20 29/24
think [70]
thinking [6]
  18/2 21/9
  33/12 33/14
  34/12 36/23
thinks [2]
  12/13 19/16
this [67]
thorough [1]
  16/13
thoroughly [1]
  22/18
those [6]   7/6
  7/17 7/23 8/5
  14/20 35/16
though [2]
  36/5 38/14
three [15]
  5/8 8/5 8/7
  8/9 16/24
  22/23 23/14
  26/1 27/22
  28/4 28/4
  31/23 32/1
  32/14 39/19
three-week [2]
  27/22 28/4
through [9]
  15/3 17/13
  18/4 18/11
  19/14 26/17
  27/20 35/15
  40/6
throw [1]
  11/12
thrust [1]
  5/14
tie [1]   3/18
time [59]
Times [1]
  2/12
timing [6]
  4/7 14/19
  14/23 23/10

to have [1]
  30/25
today [9]   4/4
  15/5 29/21
  31/15 31/20
  32/2 40/17
  40/19 40/21
together [3]
  10/1 11/11
  16/12
told [1]
  27/25
too [2]   23/2
  41/8
took [2]   24/4
  27/1
top [1]   21/9
total [3]
  9/11 9/14
  10/6
toward [1]
  6/7
track [1]
  21/2
traditional
  [1]   21/2
transcribed
  [1]   42/6
transcript [4]
  1/12 1/25
  15/4 42/5
transcription
  [1]   1/25
trial [23]
  14/19 17/5
  17/8 17/10
  17/25 18/9
  18/10 18/11
  18/24 19/2
  19/10 19/11
  19/21 20/10
  21/8 21/9
  21/13 22/22
  22/22 23/18
  25/19 34/19
  40/7
triple [1]
  35/8
TRO [1]   26/8
true [3]   28/3
  32/13 42/5
truly [3]
  14/10 35/19
  37/20

for [11]    6/6
  8/22 8/25 9/7
  10/21 11/19
  11/23 24/14
  24/15 27/12
  31/1
trying [5]
  5/18 13/1
  25/8 39/25
  41/6
Tuesday [4]
  5/18 30/21
  39/7 40/24
turns [2]
  28/16 37/9
tutorial [1]
  30/23
two [14]   3/11
  5/17 7/24
  9/15 14/24
  15/11 23/3
  24/15 26/1
  27/19 27/19
  31/19 31/20
  33/22
two-and-a-half
  [1]   9/15
type [1]
  36/16
types [1]
  23/12
typically [1]
  23/16

U

unanticipated
  [1]   7/4
under [6]
  13/7 21/22
  23/22 24/5
  25/20 29/2
undermine [1]
  37/12
undermines [1]
  22/19
understand [9]
  13/24 16/1
  17/21 23/8
  23/21 25/8
  37/11 37/20
  37/22
understanding
  [1]   18/6
understate [1]
  9/10

**U**

**Understood [1]**
 37/18
**unhappy [1]**
 4/16
**union [10]**
 7/24 16/19
 22/25 23/14
 23/23 26/4
 26/7 26/12
 26/14 26/19
**UNITED [3]**
 1/1 1/14 1/21
**unless [2]**
 8/25 33/3
**unreliability
 [1]**   40/5
**unreliable [4]**
 38/11 38/23
 38/25 39/10
**until [1]**
 29/9
**up [18]**   4/3
 4/4 10/13
 11/12 12/19
 13/10 22/1
 22/9 25/24
 28/20 29/16
 29/24 31/17
 33/4 37/1
 39/18 40/5
 40/9
**upon [4]**
 13/19 31/1
 33/3 37/25
**UPS [1]**   23/24
**us [13]**   5/17
 5/23 10/18
 10/24 17/18
 22/5 22/13
 22/13 24/4
 24/22 26/25
 26/25 27/7
**use [5]**   5/16
 5/19 6/3
 16/11 39/20
**used [2]**
 22/13 24/24
**usually [2]**
 15/15 24/16

**V**

**value [1]**
 19/12

35/9 35/10
35/10
**versus [2]**
 3/2 26/7
**very [8]**   5/5
 6/7 14/14
 26/4 31/11
 37/16 40/18
 40/19
**vice [1]**   5/9
**view [1]**   7/16
**violation [1]**
 13/17
**virtually [1]**
 24/12
**visual [2]**
 29/20 32/4
**voluntary [1]**
 27/11

**W**

**wait [1]**   28/9
**want [23]**   4/4
 4/6 6/24 10/5
 11/8 11/9
 11/17 11/23
 14/8 14/24
 14/25 16/20
 18/10 18/17
 27/7 28/22
 29/13 30/6
 39/17 39/17
 39/22
**wanted [2]**
 26/21 29/4
**wants [2]**
 24/17 40/17
**warranted [1]**
 18/22
**was [22]**   5/17
 6/18 7/3
 16/17 16/17
 23/5 24/2
 26/8 27/1
 27/21 27/25
 28/1 28/1
 29/1 33/12
 33/14 35/10
 36/23 36/24
 37/13 37/14
 37/17
**Washington [5]**
 1/22 2/5

42/7
**wasn't [3]**
 11/12 25/5
 28/6
**waste [1]**
 39/22
**way [13]**   5/4
 5/8 9/4 12/18
 19/1 19/20
 23/17 24/6
 25/3 28/6
 29/8 34/24
 40/5
**we [89]**
**we can't [1]**
 23/3
**we'll [12]**
 4/21 4/22 7/5
 12/15 12/22
 14/6 28/15
 28/18 31/16
 32/1 40/23
 40/23
**we're [19]**
 4/15 8/18 9/4
 13/14 14/5
 14/6 15/21
 16/1 23/18
 24/13 28/14
 29/10 30/14
 30/24 30/25
 34/8 38/8
 38/19 39/23
**we've [11]**
 4/19 7/17
 8/19 11/4
 12/4 17/17
 20/3 22/22
 23/1 23/2
 35/7
**week [6]**   3/11
 4/5 17/15
 27/22 28/4
 41/12
**weeks [3]**
 22/23 23/3
 28/4
**weight [1]**
 38/13
**welcome [4]**
 3/13 4/1
 33/23 38/18
**well [15]**
 3/17 3/25

11/9 18/1
 20/9 21/23
 27/25 30/10
 34/14 36/18
 36/24 37/15
 38/18
**Wells [2]**
 7/25 11/1
**were [8]**   9/3
 11/11 11/11
 18/16 21/24
 22/5 24/10
 29/1
**what [38]**
 4/12 5/1 5/21
 6/5 6/16 6/21
 7/4 7/8 8/4
 8/15 9/6
 12/14 15/12
 19/12 20/6
 20/23 23/5
 23/10 24/17
 26/3 26/19
 27/7 27/12
 27/15 28/18
 30/7 31/6
 31/8 33/9
 34/21 36/1
 37/4 37/6
 37/8 37/17
 38/4 38/20
 40/12
**what's [2]**
 20/15 23/10
**whatever [4]**
 15/19 23/20
 38/19 41/6
**when [11]**
 11/10 13/23
 14/6 14/20
 19/11 22/12
 23/21 24/1
 27/25 28/21
 40/10
**where [9]**
 11/22 13/5
 13/12 14/11
 17/13 26/7
 28/4 28/18
 34/22
**whether [4]**
 17/23 23/6
 23/12 23/16
**which [11]**

18/2 22/24
 23/9 24/18
 26/16 29/20
 30/9 32/16
 40/8
**who [20]**   3/10
 5/10 5/11
 5/12 7/13
 7/19 8/19
 12/10 24/17
 28/24 29/1
 29/20 30/1
 30/4 32/23
 33/1 34/3
 41/2
**whole [1]**
 29/11
**whom [1]**
 37/17
**why [7]**   4/25
 33/22 36/4
 36/6 36/8
 37/11 38/24
**wife [1]**
 36/24
**will [26]**   3/4
 3/10 4/11 5/5
 5/16 7/18
 10/16 11/16
 11/20 12/7
 14/1 20/13
 20/17 21/7
 21/25 24/22
 26/17 31/23
 31/24 32/14
 32/15 32/16
 33/19 35/20
 37/21 41/12
**William [1]**
 5/11
**willing [1]**
 39/7
**within [4]**
 7/6 10/7
 14/13 22/12
**without [2]**
 8/18 15/17
**witness [8]**
 4/12 5/11
 8/21 12/20
 13/16 28/23
 29/6 29/8
**witness's [1]**

**witness's...**
 **[1]**    4/12
**witnesses [27]**
    4/8  4/9  5/7
 5/8  5/19  6/2
 6/10  7/9  7/17
 7/22  8/5  8/14
 8/16  8/23
 8/24  9/1  10/8
 10/24  11/12
 12/4  12/4
 12/21  28/22
 28/24  29/5
 29/25  32/11
**won't [2]**
 22/7  30/2
**word [1]**
 21/12
**words [2]**
 14/4  21/25
**work [8]**    6/6
 24/1  28/13
 29/19  32/3
 39/7  39/15
 40/23
**worked [1]**
 23/17
**working [4]**
 20/6  23/22
 28/3  34/4
**world [6]**
 20/18  21/19
 22/21  23/16
 23/23  25/3
**worry [1]**
 17/7
**worrying [1]**
 19/1
**worth [2]**
 19/13  37/16
**would [60]**
**wouldn't [1]**
 7/3
**Wright [1]**
 19/5
**write [3]**
 15/15  16/7
 16/9
**writing [1]**
 35/22
**written [2]**
 4/13  33/25
**wrong [5]**

 19/22  20/2
 21/7

**Y**

**yeah [7]**    8/13
 9/13  20/10
 30/24  33/18
 33/23  40/14
**year [8]**    21/3
 21/10  23/17
 23/18  23/25
 23/25  26/12
 26/20
**year-and-a-half [2]**    21/10
 23/25
**years [6]**
 23/13  23/13
 23/15  24/4
 24/11  26/2
**yes [10]**    6/19
 7/23  19/25
 20/23  28/11
 29/15  32/9
 32/19  33/11
 34/7
**yet [1]**    14/21
**York [2]**    2/12
 27/5
**you [166]**
**you'll [3]**
 7/8  7/8  11/3
**you're [23]**
 4/9  4/10  4/19
 8/11  9/20
 10/4  11/8
 11/13  12/10
 12/11  12/18
 14/20  18/13
 20/1  23/4
 23/5  27/3
 28/21  33/10
 33/23  38/12
 38/18  41/5
**you've [7]**
 4/7  4/11  4/18
 10/12  12/16
 20/3  21/6
**your [49]**
**yourself [2]**
 11/4  12/10
**yourselves [1]**
    3/5