**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ATLAS AIR, INC. and POLAR AIR CARGO WORLDWIDE, INC., | Civil Action No. 1:17-cv-01953-RDM |
| Plaintiffs, | Judge Randolph D. Moss |
| v. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224, | |
| Defendants. | |

**JOINT STATUS REPORT**

I.   <u>**Joint Statement of the Status of the Case**</u>

On July 5, 2019, the U.S. Court of Appeals for the District of Columbia upheld this

Court's decision in *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F.Supp.3d 59 (2017).  *Atlas Air,*

*Inc. v. Int'l Bhd. of Teamsters*, 928 F.3d 1102 (D.C. Cir. 2019).  On August 23, 2019, this Court

ordered that the parties file a joint status report on or before October 1, 2019, addressing what, if

any, further proceedings are necessary in this case.

The parties disagree as to what, if any, further proceedings are necessary.  Plaintiffs

assert that – in the absence of a stipulation with Defendants to convert the preliminary injunction

to a permanent injunction – this case should be resolved by motion for summary judgment with

no, or very limited, additional discovery.  Defendants, on the other hand, do not agree to convert

the preliminary injunction to a permanent injunction and assert that it is necessary to set a

discovery period and a final judgment trial on the merits.  Accordingly, the parties submit this Joint Status Report for the purpose of setting forth each side's view of the case and scheduling proposal.

## II.   Plaintiffs' Statement Regarding Case Status and Further Proceedings

Plaintiffs filed their Complaint and Motion for Preliminary Injunction on September 25, 2017, alleging that Defendants were engaged in an illegal concerted slowdown designed to gain leverage for the Defendants in ongoing collective bargaining negotiations between the parties, which slowdown was causing widespread and significant flight delays and a significant decline in Plaintiffs' operational reliability.  This Court held a Status Hearing with the parties on September 29, 2017.  In that hearing, the Court informed the parties that it was "sympathetic to the notion that if [Defendants] need discovery to put on [their] case and to challenge the plaintiffs' case, that we ought to be able to come up with some reasonable method to do that in an expedited fashion, make sure it's not too burdensome but that you get what you're entitled to and what you need." (Dkt. No. 20 (Sept. 29, 2017 Tr.) at 12:17-22.)

The parties complied with the Court's direction that Defendants should obtain the discovery needed to defend their position.  As of the September 29 Status Hearing, Plaintiffs had already produced all of the data files and information that Plaintiffs' expert, Dr. Darin N. Lee, had relied upon in preparing his expert report.  (*Id.* at 24:17-25.)  On October 2, 2017, Defendants served Plaintiffs with 65 Requests for Documents and Other Information (the "65 Requests").  These Requests asked for a wide array of documents and information, such as "Identified by date, flight number, aircraft type, and customer, number of delayed arrivals," from January, 2013 and through September, 2017," or "Provide all Company Ops Bulletins and all other Company communications to pilots relating to safety, scheduling, fatigue, sick calls, and taxiing of aircraft for the period January 1, 2015 through the present." (*See* Ex. A, attached hereto.)  On

October 6, 2017, Plaintiffs began a rolling production in response to these requests.  Plaintiffs produced additional documents and information on October 9, 10, 11, 12, 13 and 17, when the production was completed.  Two of the days' productions were so large they could not be completed by electronic mail, but instead were provided over a secure file transfer site.  On October 23, 2017, Plaintiffs produced their written responses and objections to the 65 Requests. (*See* Ex. B, attached hereto.)  Except for five requests for which Plaintiffs did not maintain data sufficient to provide any response, and four requests for documents that were already in Defendants' possession (which requests Defendants agreed to defer), Defendants responded substantively to all of the 65 Requests.

At the October 31-November 2, 2017 preliminary injunction evidentiary hearing, the parties submitted their witnesses' direct testimony by sworn declarations, which by agreement of the parties were exchanged in advance of the hearing in lieu of taking depositions.  Each of the principal witnesses, including expert witnesses for each party, also offered live testimony and was made available for cross examination and questioning by the Court.  (*See* Dkt. Nos. 53-55; *see also* Dkt. No. 20 at 23:2-12; Dkt. No. 39 (Oct. 30, 2017 Tr.) at 6:8 -7:7.)  This constituted a considerable record.  As the Court described in its November 30, 2017 opinion: "Following the evidentiary hearing, the parties submitted post-hearing briefs, Dkt. 49; Dkt. 50, and proposed findings of fact, Dkt. 47; Dkt. 48.  The Union concurrently filed a motion to dismiss for lack of subject matter jurisdiction. Dkt. 51.  Atlas responded on November 14, 2017, Dkt. 52, and the Union filed its reply on November 17, 2017, Dkt. 56.  All told, although the case remains at a preliminary stage, the record occupies over 5,000 pages." *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp.3d  59, 76 (D.D.C. 2017).

Plaintiffs assert that, given the extensive discovery that has already taken place, a thorough record, fulsome briefing on all relevant legal issues, and a decision on those issues upheld by the United States Court of Appeals for the District of Columbia, the best course is to convert the preliminary injunction to a permanent injunction by stipulation of the parties (which occurs in many cases of this type[1]), and to avoid the needless burden of further proceedings.[2]  In correspondence dated September 12, 2019, however, Defendants informed Plaintiffs that they "are not interested in converting the current preliminary injunction to a permanent one, as [Defendants] continue to believe the company's underlying case is without merit."  In the absence of agreement with Defendants, Plaintiffs intend to file a motion for summary judgment given that there are no material issues of fact in dispute and there is absolutely no need for a second trial.

Contrary to the suggestion in Defendants' statement of position in this Joint Status Report, Plaintiffs do not intend to file for summary judgment based upon facts adduced at the preliminary injunction hearing alone, nor do Plaintiffs contend that the Court's preliminary.

---

[1] *See, e.g., US Airways, Inc. v. US Airline Pilots Ass'n, et al.*, Case No. 11-cv-371 (2011), Dkt. Nos. 90, 91 (Court order granting joint motion to convert preliminary injunction to permanent injunction); *Spirit Airlines, Inc. v. Air Line Pilots Ass'n, Int'l* (2017), Case No. 17-cv-60917, Dkt. Nos. 24, 25 (Court order approving stipulation that temporary restraining order will remain in place until completion of the RLA bargaining process; *United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, Case No. 08-CV-4317 (2009), Dkt. No. 138 (Court order approving stipulation that preliminary injunction will remain in effect until completion of RLA bargaining process; *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,* Case No. 00-CV-03207 (2001), Dkt. No. 67 (following preliminary injunction, Court entered Consent Order staying proceedings pending completion of RLA bargaining process; *cf. American Airlines, Inc. v. Transport Workers Union et al.,* 19-cv-00414-A, Dkt. No. 102 (Court held "[c]ombined preliminary injunction hearing and non-jury trial," pursuant to FRCP 65"); *United Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, Case No. 00-cv-07265, Dkt. Nos. 105, 114 (2002) (preliminary injunction remained in place without further proceedings).

[2] This case is procedurally unlike *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, No. 16-CV-1096, 2016 WL 7117388 (S.D. Ohio Dec. 7, 2016), cited by Plaintiffs.  In that case, a TRO hearing was held one day after the motion for temporary restraining order was filed – without the benefit of discovery or time to prepare.  The Court agreed to convert the TRO to a preliminary injunction on the plaintiff's motion, but declined to convert it to a permanent injunction without a "final chance to be heard on the merits."

injunction decision somehow "controls" or "locks in" this Court's ultimate decision on whether to grant a permanent injunction.  Rather, Plaintiffs' position is that the final judgment on the merits can be resolved through the summary judgment process set forth in Rule 56 of the Federal Rules of Civil Procedure, including materials in the existing record as well as any additional record evidence and witness declarations presented by the parties.  *See* Fed. R. Civ. P. 56(c). This process would include any limited additional discovery that Defendants can demonstrate is necessary for their opposition to the summary judgment motion, in accordance with Federal Rule of Civil Procedure 56(d).

At the September 29, 2017 Status Hearing, the Court expressed skepticism about the need for additional discovery or a final judgment trial following a preliminary injunction trial:  "… the Court has limited resources. The notion of doing it twice is not ideal. My suspicion is although this is a lot of pressure to get it done quickly, that I don't care how big the case is, in virtually any case what's really important comes down to 10 or 15 documents and a couple of important witnesses. There ought to be some way to try and boil it down to that. You can come back for another hearing a year down the road and it can go on for two weeks. My suspicion is at the end of the day that the further evidence is not going to be all that significant, because just based on experience you can boil these things down. But we'll have to see."  (Dkt. No. 20 at 39:11-23.)

Plaintiffs agree with the Court's comments in this regard.  Plaintiffs submit that given the extensive discovery that has already occurred, there is little, if any, non-repetitive discovery that would be required for resolution of this case on the merits.  Any further evidence is not possibly going to be significant – the material indisputable evidence at the preliminary injunction hearing included written communications to the pilots expressly encouraging a concerted slowdown to leverage collective bargaining, and operational data showing a statistically significant (i.e.,

concerted) change in pilot behavior starting when collective bargaining began.  These facts —

upon which this Court and the Court of Appeals relied in determining that Plaintiffs were likely

to prevail on the merits — will not change.  And further legal argument by Defendants will also

be unavailing – the D.C. Court of Appeals has rejected each and all of the Defendants' legal

arguments, including regarding the status quo standard under Section 2, First of the Railway

Labor Act ("RLA"), the major/minor dispute distinction under the RLA, and the Norris

LaGuardia Act's requirements and restrictions.

Contrary to Defendants' position, section 107 of the Norris-LaGuardia Act does not

preclude summary judgment where, as here, the Plaintiffs' witnesses have already been subject

to cross examination at the preliminary injunction hearing and, as Plaintiffs will demonstrate, no

material issues of fact are in dispute.  29 U.S.C. § 107; *cf. Burlington N. & Santa Fe Ry. Co. v.*

*Bhd. of Maint. of Way Employes*, 143 F. Supp. 2d 672, 689-90 (N.D. Tex. 2001), aff'd sub nom.

*Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees*, 286 F.3d 803 (5th Cir.

2002) ("there does not need to be adherence in an RLA injunction case with the open-court

hearing feature of § 107 if there is no dispute about the reliability of the evidence [because]

'[t]he purpose of section 107 is served if the evidence is inherently reliable and there is no harm

to the parties.' . . .  Here, the court's summary judgment rulings are being made on the basis

of undisputed evidence; and, BMWE has had ample opportunity to present whatever evidence it

might wish to adduce in opposition to the evidence plaintiffs have put in the summary judgment

record.")  (quoting *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300, 1311 (11th

Cir. 2001)).

Plaintiffs therefore request a scheduling order that allows Plaintiffs the opportunity to file

a motion for summary judgment, and that no trial or related dates be scheduled prior to

resolution of the motion for summary judgment.  Under this procedure, if summary judgment is

granted, the parties and this Court will be spared the time and expense of preparing for a second

unneeded trial.

Plaintiffs also request a scheduling order that allows no additional discovery, given the

extensive discovery that has already been conducted, unless Defendants can demonstrate

specifically that such discovery is necessary for their opposition to summary judgment.

Plaintiffs request that, if helpful to the Court, the Court set a status conference to address

the parties' positions as to what further proceedings are necessary in this case.

## III.    Defendants' Statement Regarding Case Status and Further Proceedings

Defendants assert that it is necessary to complete the remaining stages of the injunction

litigation in the ordinary course and that Plaintiffs' improper attempt to further prejudice

Defendants' defense here should be rejected. Defendants therefore seek a new scheduling order

allowing for the Defendants to file an answer and any counterclaim by November 15, 2019, and

setting a discovery period following a status conference hearing in October.

A preliminary injunction is not an adjudication on the merits but merely a preliminary

decision made in expedited fashion with limited discovery. In *Natural Resources Defense*

*Council v. Pena,* 147 F.3d 1012, 1022-1023 (D.C. Cir. 1998) the D.C. Circuit explained that:

> [t]he purpose of a preliminary injunction is merely to preserve the relative
> positions of the parties until a trial on the merits can be held. Given this limited
> purpose, and given the haste that is often necessary if those positions are to be
> preserved, a preliminary injunction is customarily granted on the basis of
> procedures that are less formal and evidence that is less complete than in a trial on
> the merits. A party thus is not required to prove his case in full at a preliminary-
> injunction hearing, and the findings of fact and conclusions of law made by a
> court granting a preliminary injunction are not binding at trial on the merits.... In
> light of these considerations, it is generally inappropriate for a federal court at the
> preliminary injunction stage to give a final judgment on the merits.

Quoting *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68

L.Ed.2d 175 (1981) (citations omitted); *accord Communications Maintenance, Inc. v. Motorola, Inc.,* 761 F.2d 1202, 1205 (7th Cir.1985) ("A court must be cautious in adopting findings and conclusions from the preliminary injunction stage in ruling on a motion for summary judgment for two reasons. First, a court's findings of fact and conclusions of law at the preliminary injunction stage are often based on incomplete evidence and a relatively hurried consideration of the issues. ... Second, the questions focused on differ in deciding a motion for preliminary injunction and in deciding a motion for summary judgment. In the former, a court considers whether there is a *reasonable likelihood* that the *moving party* will prevail on the merits; in the latter a court considers whether there is any *issue of material fact* remaining after construing the facts in a *light most favorable* to the *non-moving* party.") (emphasis original; citations omitted).

Hence, a district court's decision to omit both discovery and a trial on the merits, thus losing the opportunity to consider less severe equitable relief, has the same effect as would have occurred had the Defendants been required to fully make their case at the preliminary injunction hearing—a practice at odds with both the Federal Rules of Civil Procedure and the provisional nature of preliminary injunctive relief. It is reversible error. *NRDC v. Pena, supra*, citing *United States v. Owens,* 54 F.3d 271, 277 (6th Cir.1995) ("[W]e must vacate the permanent injunction and remand this case to the district court to allow [the plaintiff] to conduct additional discovery and present his version of the facts at an evidentiary hearing. Otherwise, we would create a rule that would obligate a party to present his full case at a hearing for a preliminary injunction."), *cert. dismissed sub nom. Spirko v. United States,* 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995). See, Wright and Miller, *Relationship of the Preliminary Injunction Hearing to the Trial on the Merits*, 11A Fed. Prac. & Proc. Civ. § 2950 (3d ed.)("Because it is likely that one or more of the

parties will not present their entire case at an unconsolidated preliminary-injunction hearing, it ordinarily is improper to decide a case solely on the basis of that type of a hearing.").

As this Court is well aware, Plaintiffs filed this action for a preliminary and permanent injunction on September 25, 2017 after covertly preparing its statistical case against Defendants for over a year, and drafting its voluminous preliminary injunction motion papers for months. The Court recognized this at the September 29, 2017 status conference. (Dkt. No. 20, pg. 16, lines 1-2; pg. 32, lines 13-15). Nevertheless, to guard against an alleged threat of disruption to Plaintiffs' holiday cargo deliveries, this Court set a prompt preliminary injunction hearing date for October 31, 2017 with extensive pre-trial submissions commencing on October 23, 2017. The Court afforded limited court time for the evidentiary hearing as well (Dkt. No. 20, pg. 22), as the Court needed sufficient time to decide the case and issue an opinion before the holidays.

Plaintiffs never moved to consolidate the trial on the merits under Fed. R. Civ. P. 65(a)(2). (Dkt. No. 27, line 11-13). The Union objected to such consolidation under these onerous circumstances in any event. (Dkt. No. 20, pg. 27, lines 4-9). The Court considered such consolidation at the status conference but decided against it in favor of an expedited preliminary injunction hearing with limited witnesses and evidence. Indeed, the Court thus limited the parties to expedited, partial discovery. (Dkt. 20, pg. 20).

Concededly, Plaintiffs provided piecemeal discovery responses to Defendants well through late October 2017, damaging Defendants' opportunity to prepare its defense, including the preparation of full, countervailing expert evidence. Defendants were thus unable to depose Plaintiffs' witnesses and could not perform further paper discovery in time. Instead, Defendants were largely forced to submit declarations from their witnesses and register written objections to Plaintiffs' declarations.

Plaintiffs' gambit here to deny Defendants discovery and file for summary judgment based upon facts adduced at the preliminary injunction hearing alone is to be sure "at odds" with the Federal Rules of Civil Procedure and the Norris LaGuardia Act, 29 U.S.C. § 107. First, the court's findings of fact and conclusions of law with regard to the preliminary injunction are not binding at trial. *Wright and Miller, supra.*  Based, as they usually are, on incomplete evidence and a relatively hurried consideration of the issues, these provisional decisions should not be used outside the context in which they originally were rendered. Consequently, it is inappropriate for the court at a Rule 65(a) hearing to make findings of fact or conclusions of law that go beyond what is necessary to decide whether a preliminary injunction should be issued. *Id.*

Second, Fed. R. Civ. P. 56(d) provides that when a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition to summary judgment, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Thus, it would be inappropriate here to deny Defendants the opportunity to conduct discovery without affording them an opportunity to move for such relief, provide affidavit evidence in support of discovery, brief the issue and be afforded notice and a hearing on such issues.

Third, Defendants submit that they are entitled to a permanent injunction hearing under the express terms of the Norris-LaGuardia Act, 29 U.S.C. § 107 as a matter of subject matter jurisdiction. "Strict adherence to the Act's procedures is not a mere matter of form: A district court has no jurisdiction under the Norris–LaGuardia Act to issue a labor injunction without adhering to the explicit terms of the Act." *In re District No. 1—Pacific Coast District, MEBA*, 723 F.2d 70, 76–77 (D.C. Cir. 1983). The Act requires, among other things, "the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of

a complaint made under oath." 29 U.S.C. § 107. While Plaintiffs cite *Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employes*, 143 F. Supp. 2d 672, 689-90 (N.D. Tex. 2001) for the proposition that the Norris-LaGuardia Act's open court hearing requirement is inapplicable here in an RLA case, in reality the district court there ruled on *undisputed facts* and applied the NLGA. In the present case, we merely have preliminary injunction findings by the Court which are not binding for purposes of the merits. *Wright and Miller, supra.* Nothing in *Burlington N. & Santa Fe Ry. Co.* supports the Plaintiffs' heavy-handed attempt to quash discovery for trial here.

Given the limited discovery afforded Defendants and severely expedited hearing on the preliminary injunction, it is imperative that Defendants be afforded due process and a fair opportunity to adequately develop the facts to defend the permanent injunction in accordance with law. Defendants have cited no Railway Labor Act case which eschews this fundamental right of Defendants to so defend themselves in open court, but simply cite other cases where the parties *voluntarily consented* to abstain from further proceedings. But in *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, No. 16-CV-1096, 2016 WL 7117388, fn. 11 (S.D. Ohio Dec. 7, 2016), the district court denied the plaintiff carrier's similar request to convert a slowdown injunction under the RLA issued after a TRO hearing into a permanent injunction, as the union should be afforded its "final chance to be heard on the merits." The pilots union here must be afforded the same chance.

While it has been recognized that initial preliminary injunctions decisions are subject to a cognitive "lock-in" effect, K. Lynch, *The Lock-In Effect of Preliminary Injunctions*, 66 Fla. L. Rev. 779 (2014), Defendants are confident that this Court recognizes that this case was a close one at the preliminary injunction stage, particularly in light of Plaintiffs' reliance on questionable statistics. Indeed, Plaintiff's motion for a preliminary injunction and expert evidence alleged six

areas of alleged slowdown activity: 1) increased fatigue calls, 2) increased rejection of

inadequate crew meals, 3) increased maintenance "write-ups," 4) increased "short-notice" sick

calls, 5) increased effort to fill open time, and 6) increased incidence of "blocking out" on time.

The Court *rejected* Plaintiffs' baseless statistics and claims regarding fatigue calls, crew meals,

and maintenance write-ups. With respect to short-notice sick calls, the Court indeed noted that

the issue was a "close one." *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp.3d 59, 90

(2017).  Tellingly, Atlas *completely abandoned* its anecdotal evidence of sick leave abuse during

the hearing and Plaintiffs' expert concededly could not show an increase in sick leave usage (a

"sick out"). Rather, Plaintiffs were forced to concoct a "last minute" sick call metric that none of

the pilots union communications ever advocated for at all. Defendants should be permitted to

explore in discovery, for instance, whether the alleged increase in last-minute sick calls were

attributable to other causes, like the types of illnesses suffered or other factors. At this point,

Atlas has only identified aggregate last-minute sick calls. Time did not permit the pilots union to

explore these unidentified sick calls under the pressure of an impending preliminary injunction

hearing. Plaintiffs may be forced to abandon these claims at a trial on the merits just like they did

with respect to the anecdotal evidence they relied upon but then distanced themselves from at the

preliminary injunction stage of this proceeding. Indeed, as the Court noted at the outset,

> ...It is difficult, if not impossible, moreover, for the Union, Atlas, or the Court to determine whether a particular pilot could have provided earlier notice before calling in sick, whether a particular pilot is too tired to fly safely, or whether a pilot legitimately wanted to spend more time with her family and thus decided not to volunteer for an open flight for reasons wholly unrelated to a slowdown. ...

*Id.* at 67.

Needless to say, there are a host of areas which Defendants must explore regarding

Plaintiffs' claims and Defendants' defenses, which are too numerous to outline here.[3] Those

areas were indeed too "difficult" to address in the rush of expedited discovery and in an

abbreviated hearing. Defendants could not defend on all fronts in the context of such an

expedited hearing as they could at a fair trial on the merits. In all fairness, the Court should avoid

the temptation of "locking in" to preliminary conclusions and should reject Plaintiffs' invitation

to short-circuit the normal permanent injunction trial process, the rules of procedure, and the

protective provisions of federal labor law.

Accordingly, Defendants respectfully request that the Court establish a new scheduling

order allowing for the Defendants to file an answer and any counterclaim by November 15,

2019, and setting a discovery period following a status conference hearing in October. In the

alternative, Defendants request that the Court afford them the opportunity to fully brief the issue

and for a hearing on this important question.

Dated:  October 1, 2019

Respectfully submitted,


By: /s/ Robert A. Siegel                     By:    /s/ James Petroff
Robert A. Siegel                             Deirdre E. Hamilton
(D.C. Bar #1004474)                          (D.C. Bar #472334)
Michael G. McGuinness                        Edward M. Gleason Jr.
(admitted *pro hac vice*)                    (D.C. Bar #429325)

---

[3] Fed. R. Civ. P. 26(b) provides broad discovery rights to Defendants:

 Discovery Scope and Limits.

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as
follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
party's claim or defense and proportional to the needs of the case, considering the importance of
the issues at stake in the action, the amount in controversy, the parties' relative access to relevant
information, the parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely benefit.
Information within this scope of discovery need not be admissible in evidence to be
discoverable.

Rachel S. Janger
(D.C. Bar #467142)
Sloane Ackerman
(admitted *pro hac vice*)

O'MELVENY & MYERS LLP

1625 Eye Street, NW
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
rsiegel@omm.com
rjanger@omm.com

400 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
mmcguinness@omm.com

7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
sackerman@omm.com

Attorneys for Plaintiffs

Nicholas M. Manicone
(D.C. Bar #461172)
James Petroff
(D.C. Bar # OH0042)

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS

25 Louisiana Avenue, NW
Washington DC 20001
Telephone:  (202) 624-6948
Facsimile:  (202) 624-6884
dhamilton@teamster.org
nmanicone@teamster.org

LAW OFFICES OF EDWARD GLEASON

910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone:  (202) 800-0099
egleason@gleasonlawdc.com

BARKAN MEIZLISH, LLP

250 East Broad Street, 10th Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
jpetroff@barkanmeizlish.com

Attorneys for Defendants

## SERVICE LIST

Robert A. Siegel
Rachel S. Janger
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
rsiegel@omm.com
rjanger@omm.com
*(Service via CM/ECF)*

Michael G. McGuinness
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
mmcguinness@omm.com
*(Service via CM/ECF)*

Sloane Ackerman
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
sackerman@omm.com
*(Service via CM/ECF)*

Deirdre E. Hamilton
Nicolas M. Manicone
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001
dhamilton@teamster.org
nmanicone@teamster.org
*(Service via CM/ECF)*

Edward M. Gleason, Jr.
Law Office of Edward Gleason, PLLC
910 17th Street, NW, Suite 800
Washington, DC 20006
egleason@gleasonlawdc.com
*(Service via CM/ECF)*

Nicolas M. Manicone
International Brotherhood of Teamsters
25 Louisiana Avenue, NW
Washington, DC 20001
*(Service via CM/ECF)*

James Petroff
Barkan Meizlish, LLP
250 East Broad Street
10th Floor
Columbus, OH 43215
jpetroff@barkanmeizlish.com
*(Service via CM/ECF)*